**ARNOLD'S HOFBRAU, INC.**

v.

**GEORGE HYMAN CONSTRUCTION
CO., INC., Appellant,**

and

**Oliver T. Carr, Jr., et al.**

No. 71–1827.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1972.

Decided June 7, 1973.

Stanley J. Marcuss, Washington, D. C., with whom Vincent H. Cohen, Washington, D. C., was on the brief, for appellant.

James A. Welch, Washington, D. C., for appellees Beuchert and Carr.

Leonard C. Collins, Washington, D. C., with whom. James F. O'Donnell, Washington, D. C., was on the brief for appellee, Arnold's Hofbrau, Inc.

Before WINTER,* Circuit Judge for the Fourth Circuit, and MacKINNON and ROBB, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff, which conducted a restaurant on leased premises at 1724 Pennsylvania Avenue, N.W., Washington, D. C. (hereafter the "Hofbrau building"), sued George Hyman Construction Company, Inc. (Hyman) and Beuchert and Carr. It sought recovery against Hyman on the theory that Hyman, who was engaged in constructing an adjacent building (hereafter the "Mills building"), negligently damaged plaintiff's premises to the extent that plaintiff was forced to discontinue the operation of the restaurant. Recovery against Beuchert and Carr was sought on the theory that they, too, were negligent in undertaking repairs to plaintiff's premises and in failing to fulfill their promises to plaintiff to repair the premises. The record is not clear as to Beuchert's and Carr's precise interest in the Hofbrau building and the Mills building, but neither disclaims liability on the technicalities of ownership. In June 1968, Beuchert and Carr became owners of the Hofbrau building; prior to then Carr was a principal of a management company which managed the Hofbrau building. Beuchert and Carr were either trustees for the owners of the Mills building with a beneficial interest of their own, or copartners in the partnership which owned it. Beuchert and Carr cross-claimed against Hyman alleging that it had agreed to indemnify them for damages of the type asserted by plaintiff.

In a jury trial, plaintiff obtained a verdict for $90,000 against all three defendants. The jury was instructed that Beuchert and Carr, as owners of the Mills building, were absolutely liable for damages caused by its construction, and only the issue of proximate cause was submitted to the jury. However, the jury, on its own motion, and with the court's permission, also found Beuchert and Carr liable on other grounds of negligence, the consequence of which would be to reduce any judgment to which they might be entitled on their cross-claim by one-half. In effect granting judgment n. o. v. on the jury's verdict with

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a) (1970).

respect to the negligence of Beuchert and Carr, the district court set aside the jury's finding and gave Beuchert and Carr judgment on their cross-claim for full reimbursement.

In this appeal, Hyman contends that (a) the district court erred in granting the motion for judgment *n. o. v.* of Beuchert and Carr and in sustaining their cross-claim for indemnity against Hyman, (b) the district court improperly instructed the jury with regard to the proper measure of damages that plaintiff should recover if liability of any defendant was found, and (c) the district court should have granted a mistrial because of persistent and repeated references throughout the trial by counsel for Beuchert and Carr to the fact that Hyman had liability insurance.

We agree that Beuchert and Carr were improperly exonerated and that the jury was improperly instructed as to how to measure damages. We do not agree that the references to Hyman's insurance coverage were so prejudicial as to warrant a new trial as to liability. We, therefore, reverse the judgment of Beuchert and Carr on the cross-claim and direct that it be re-entered for one-half of the damages to be subsequently determined, affirm the judgment of liability against Hyman, and award a new trial on damages as to all defendants.

## I.

Since Hyman makes no substantial claim that it was not negligent, aside from the assertion of prejudice in the references to its liability insurance throughout the trial, we need not detail all of the evidence adduced against it at trial. We will confine ourselves principally to the facts bearing on the liability of Beuchert and Carr.

Plaintiff operated a German specialty restaurant at the Hofbrau building. The precise term of the lease is not disclosed; but in 1961 and again in June 1967, plaintiff was advised that its lease would be terminated in June 1969, and that it would be required to vacate the premises on or before June 30, 1969.

In 1965, Hyman contracted to erect the Mills building on the adjacent premises. Construction began in February 1965, and about eight months later, in October 1965, one of the plaintiff's principals noticed that the floor in the area of the kitchen and the coffee urn was sinking. Notice was given to the management agent for the building, who concededly acted as agent for Beuchert and Carr. Individually and through their agent, Beuchert and Carr assured plaintiff that the condition would be corrected and did, in April 1966, attempt to have the condition corrected by having jacks installed in the basement under the floor. That repair work proved ineffective, however, and the floor continued to sink. In June 1967, Beuchert and Carr's agent employed structural engineers to determine what was needed to be done to repair plaintiff's premises. That engineer advised that the jacks which had been installed were improperly located and were, therefore, ineffective to stem the increasing subsidence. The engineer recommended other corrective action, but the recommendations were never carried out.

Throughout this period, plaintiff believed that Beuchert and Carr would have the floor repaired, but the floor nevertheless continued to sink. In November 1967, the government of the District of Columbia ordered that the restaurant be repaired or closed. Beuchert and Carr re-engaged the structural engineer who repeated his earlier recommendations. When a contractor estimated that the cost of repairs would be approximately $10,000, Beuchert and Carr concluded not to have the work done, and finally in February 1968, informed plaintiff that the repairs would not be made. Plaintiff's restaurant operation at this location ceased on November 21, 1967; plaintiff made no attempt to relocate its business; but plaintiff continued to pay rent until March 1968, and incurred other charges.

## II.

The district court instructed the jury, in effect, *inter alia*, that if it found that a defendant promised the plaintiff that he would make all repairs necessary to keep the premises in fit condition for the plaintiff to operate its restaurant, that the promises were made when defendant knew that plaintiff would rely on them, and that plaintiff relied on the promises to its detriment, it could conclude that that defendant was liable. After giving this instruction, the district court furnished the jury with a form of verdict which permitted it to find liability on the part of Beuchert and Carr only in their capacity as owners of the Mills building for violation of the D.C. Building Code. After the jury began its deliberations, it inquired whether it could find liability on the part of Beuchert and Carr on a general theory of negligence, and when it was advised that it could, it found against them, as well as Hyman. In fact, the jury's verdict was returned only against Carr, but it is not contested in this appeal that the return must be interpreted to include Beuchert also. The district court set this aspect of the verdict aside because it concluded that (a) while the evidence showed that Beuchert and Carr caused jacks to be installed under the kitchen floor and that they were improperly located, there was no evidence that the jacks caused any damage to the Hofbrau building, and (b) Beuchert and Carr could not be liable for failure to repair the Hofbrau building because Hyman's construction contract imposed that duty on him.

■■ We disagree with the district court that there was no basis on which the jury could find liability on the part of Beuchert and Carr on general grounds of negligence. Two rules of law point to the opposite result. The first is the familiar statement that one who undertakes to act has a duty to act carefully and if he fails to do so, he may be held liable in negligence. Restatement of Torts 2d, Section 323 (1964). *See* President and Directors of George-

town College v. Hughes, 76 U.S.App.D.C. 123, 126, 130 F.2d 810, 813 (1942); Adkins & Ainley, Inc. v. Busada, 270 A.2d 135, 137 (D.C.Ct.App.1970). The second is the principle of promissory estoppel, *i. e.*, that one who promises another to act but fails without excuse to do so is liable to the party who has relied upon such promises to his detriment. Restatement, Contracts § 90 (1932). *See* Seavey, Reliance Upon Gratuitous Promises or Other Conduct, 64 Harv.L.Rev. 913, 926 (1951): "Estoppel is a tort doctrine. The rationale of Section 90 is that justice requires the defendant to pay for harm caused by foreseeable reliance upon the performance of his promise. . . ."

■ The evidence before the jury was that the agent of Beuchert and Carr repeatedly promised plaintiff that he would have the sinking floor taken care of; a contractor was hired to install jacks underneath the floor to keep it from sinking further; the jacks were installed for that purpose in April 1966, but they proved ineffective because improperly placed and the floor continued to sink; a structural engineer was employed to determine what was needed to prevent further deterioration in the condition of the floor; the engineer informed the agent that the jacks were improperly located and that certain other corrective steps were needed, but those corrective steps were never undertaken. Throughout the period there was evidence that plaintiff relied upon these defendants and their agent to correct the condition, and that throughout the period the subsidence worsened to the point that the District of Columbia government ordered plaintiff's restaurant closed. Hence, there was both a failure to perform with reasonable care an assumed duty, and a promise of repair, upon which plaintiff relied to its detriment, which was not carried out. Unless Beuchert and Carr were insulated from liability by their contract with Hyman, a contention that we will consider next, the jury's finding that they were

liable to plaintiff, should not have been disturbed.

The district court ruled that "the contract with Hyman completely passed on to Hyman the owner's duty to protect or repair adjacent property." Our examination of the contract discloses as probably pertinent only Article 12, which provides, in relevant part:

The Contractor shall continuously maintain adequate protection of all his work from damage and shall protect the Owner's property from injury or loss arising in connection with the Contract. He shall make good any such damage, injury or loss, except that as may be directly due to errors in the Contract Documents or caused by agents or employees of the Owner, or due to causes beyond the Contractor's control and not to his fault or negligence. *He shall adequately protect adjacent property as provided by law and the Contract Documents* . . . (emphasis added).

When the district court relied upon Article 12 to exonerate Beuchert and Carr, it misconceived the scope of the Article's protection. Beuchert and Carr were determined liable, not for Hyman's negligence or failure to comply with the contract, but for their own negligence in making repairs and the unexcused breach of their own promises to make repairs. Article 12 may thus not be applied to insulate them from recovery because, as we have held " . . . where . . . the agreement does not specifically refer to losses incurred by the indemnitee's own negligence, the intent to cover such losses must otherwise *plainly* appear from the agreement. Maiatico v. Hot Shoppes, Inc., 109 U.S. App.D.C. 310, 287 F.2d 349 (1961). 'No particular form or words are needed but the intent to waive negligence must be clear.'" Moses-Ecco Company v. Roscoe-Ajax Corp., 115 U.S.App.D.C. 366, 368, 320 F.2d 685, 687 (1963) (emphasis supplied). Since the language of Article 12 does not clearly render Hyman liable for the negligence of Beuchert and Carr, nor was there persuasive evidence of such

an intent, the agreement cannot be given that effect.

### III.

Hyman's complaint with respect to damages arises from the following portion of the district court's charge:

Now, you may award such sum as will reasonably compensate Plaintiff corporation for what it lost. In computing this sum, you may take into account the fair market value of the restaurant as a going business, less the value of the physical assets retained by the Plaintiff after it closed, plus the value of any prepaid items for which the Plaintiff did not receive its anticipated benefit as a result of the premature closing.

The district court also instructed the jury that "[p]laintiff's personal income after the restaurant closed from non-restaurant work is not related to the value of the business loss," that plaintiff had a duty to minimize the loss, and that damages found by the jury should be adjusted by "whatever amount, if any, you feel appropriate if on the preponderance of the evidence the jury finds the Plaintiff could have minimized or mitigated those damages." Apparently, the district court was referring to the fact that the evidence showed that plaintiff's principal owner was Miss Schumann, and that beginning in January 1969, she obtained employment as a private secretary at a salary of approximately $9,000 per year.

■ We think there was error in the first quoted portion of the charge because, framed in terms of fair market value, it permitted the jury to assume that plaintiff's restaurant business was completely destroyed. While the restaurant, after it was ordered closed, did not in fact re-open, it retained a certain reputation and degree of good will which could have permitted the restaurant to relocate. There was expert testimony at the trial that while change of location would have had some adverse effect on the restaurant business, a specialty restaurant, such as that operated by plain-

tiff, could by its own reputation induce its patrons to follow it to the new location. Plaintiff's own witness testified that given adequate notice the restaurant could have relocated in three or four months. Moreover, there was evidence that in 1961, before construction of the Mills building began, plaintiff had been advised that it would be required to vacate the premises on or before June 30, 1969, and that advice was repeated in June, 1967. It follows that an instruction having as its implied premise that the restaurant business would be discontinued was erroneous.

■ Plaintiff should have been allowed as damages the loss of (a) net profits, (b) those fixed expenses, including salaries, it actually paid or was liable to pay, and (c) the value of any prepaid items for which plaintiff did not receive its anticipated benefit, all for the period up to the time that it knew or should have known that defendants would not repair the premises and for the additional period thereafter that reasonably would have been required to relocate the plaintiff's business. In no event should the aggregate period extend beyond June 30, 1969, the date on which plaintiff had been told to vacate the premises. Since Miss Schumann was apparently the principal, if not the sole owner of plaintiff, the jury should also have been instructed that plaintiff's losses for salary expenses should be diminished by the greater of the earnings (a) which she generated, or (b) which she might have generated from other employment beginning with the time she should have realized that the restaurant would not re-open; but only to the extent that her period of actual or imputed new employment overlapped the period for which the jury found that plaintiff was entitled to damages.

■ Our conclusion with respect to the measure of damages necessitates a new trial as to damages with respect to all defendants. It is true that only Hyman has appealed; but it is untrue, as plaintiff contends, that we lack jurisdic-

tion to award Beuchert and Carr a new trial as to damages because they did not take an appeal. "While ordinarily an appellee . . . cannot secure alteration or modification of a judgment unless he has taken his own appeal, this rule does not state a jurisdictional restriction on federal appellate courts but merely constitutes a 'rule of practice.' . . . [citations]." Tug Raven v. Trexler, 419 F.2d 536, 548 (4 Cir. 1969); 9 Moore's Federal Practice ¶¶ 204.11[4] and [5]. It would be unconscionable for plaintiff to be entitled to claim a greater or lesser recovery for the same damage from Hyman than from Beuchert and Carr. Plaintiff has fully litigated the correctness of the amount of its recovery in Hyman's appeal so that plaintiff has been neither helped nor hurt by the failure of Beuchert and Carr to appeal; nor do we perceive that Hyman has not asserted any argument available to Beuchert and Carr had they appealed. Being satisfied that we must require the amount of plaintiff's recovery from Hyman to be reassessed, we are persuaded that the only just result is to require the same reassessment of the amount of plaintiff's recovery from Beuchert and Carr.

### IV.

Even though there were persistent and unnecessary references by counsel for Beuchert and Carr to the fact that Hyman carried liability insurance, several factors persuade us that this conduct did not create sufficient prejudice to warrant the award of a new trial to Hyman on the issue of liability.

■ This is not a case in which the fact that Hyman was insured could have failed to be brought to the knowledge of the jury. Because of the fact that Hyman was insured when plaintiff complained of the sinking of the floor and when she asserted liability against Hyman, Hyman's insurer investigated the matter with its own investigators and employed engineers to conduct other investigations, tests and inspections.

Some of these were called as witnesses in Hyman's defense. Manifestly it was a proper question to these witnesses to inquire by whom they were employed or engaged to perform these several functions. Thus, the name of Hyman's insurer could not have been concealed from the jury. The district court was fully cognizant of the problem and it unequivocally instructed the jury that representatives of Hyman's insurers observed certain facts and did certain things so that the insurer's name and those witnesses came into the case, but the fact that Hyman "had insurance with Liberty Mutual should not affect your determination as to the liability or the amount of damage, if any, in this case." With respect to an abortive witness who had a connection with another insurance company, the jury was told to "forget his testimony. . . . We don't really know what he had to do with the case or what his company had to do with the case." The inquiry from the jury about the form of verdict which was given to it by the district court and the fact that it returned a verdict against Beuchert and Carr, under the circumstances, are not without significance. There was no evidence that Beuchert and Carr were insured. If the jury had been prejudiced by evidence that Hyman was insured and had returned a verdict against Hyman for that reason, it is unlikely that it would have asked whether it could return a verdict against Beuchert and Carr and would have found them liable and assessed damages against them. In the new trial as to damages which we will award, we anticipate little occasion for any legitimate reference to the fact that Hyman is insured or to the identity of its insurer.

For these reasons, we conclude that the judgment of Beuchert and Carr on the cross-claim should be reversed and re-entered for one-half of the damages to be subsequently determined. Plaintiff's judgment of liability against Hyman should be affirmed and a new trial as to damages should be awarded to all defendants.

Affirmed in part; reversed in part; new trial awarded as to damages.