The TOWERS TENANT ASSOCIATION, INC., et al., Plaintiffs,

v.

The TOWERS LIMITED PARTNERSHIP, et al., Defendants.

Civ. A. No. 82–3289.

United States District Court, District of Columbia.

May 5, 1983.

Benny L. Kass, Robert A. Fall, Kass & Skalet, P.C., Washington, D.C., for plaintiffs.

S. Scott Morrison, Willkie, Farr & Gallagher, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

Before the Court is defendants' consolidated motion, pursuant to Rule 12 of the Federal Rules of Civil Procedure, (1) for a more definite statement of the allegations of paragraph 13 of the complaint, as realleged in Counts I through V; (2) to dismiss Counts II and III of the complaint for failure to state a claim upon which relief can be granted; and (3) to dismiss Count V of the complaint with respect to plaintiff, the Towers Tenant Association, Inc., for failure to state a claim upon which relief can be granted. Plaintiffs have opposed.

For the reasons stated herein, we deny defendants' motion with regard to (1) and (2) above, but grant their motion to dismiss

Count V as brought by the Towers Tenant Association, Inc., since that party concedes it is an improper plaintiff under Count V.

## I. INTRODUCTION

The focus of this lawsuit is the conversion into a condominium complex of certain residential property known as the Towers of Cathedral Avenue ("the Towers"), located at 4201 Cathedral Avenue, N.W., Washington, D.C. Plaintiff Unit Owners Association of the Towers Condominium ("Condominium Association"), represents the unit owners of the condominium property. Plaintiff, The Towers Tenant Association, Inc. ("Tenant Association"), is a District of Columbia non-profit corporation composed of members who were tenants at the Towers on or before the date that property was converted to condominium ownership. Defendants are the developer of the project, The Towers Limited Partnership ("TLP"), and its two general partners, Towers Development, Inc. ("TDI"), and The Management Group, Inc. ("MGI").

The complaint is styled in five counts, all of which are based on a common series of factual allegations which purports to show that defendants have breached certain duties and failed to perform the promised rehabilitation of the complex. Count I asserts breach of contract, Count II negligence, Count III breach of implied warranties, Count IV breach of express warranties, and Count V breach of the statutory warranties provided in D.C. Code § 45–1847 (1981 ed.). Plaintiffs seek $650,000.00 in damages for alleged "defects and deficiencies" in the condominium property, which have allegedly diminished the value of the property, and will require the Tenant Association and the Condominium Association to collect assessments from their members to pay for necessary repairs and rehabilitation.

## II. DISCUSSION

A. *More Definite Statement*

Defendants have moved under Rule 12(e) of the Federal Rules of Civil Procedure, for a more definite statement with respect to paragraph 13 of the complaint. That paragraph states:

13. In addition to the promises and representations made by T.L.P. in the Agreement and the aforementioned letters, employees and agents of T.L.P. made further written and oral representations and promises to the Tenant Association and the Condominium Association concerning renovation. These oral promises occurred during the course of construction when questions were asked of T.L.P. as to their specific intentions. The Tenant Association and Condominium Association relied on the written and oral representations and promises of T.L.P.

Defendants contend that, even under the liberal notice-pleading standard of Rule 8, the above language is so vague and ambiguous that they cannot reasonably formulate a response thereto. Plaintiffs argue, and we agree, however, that paragraph 13, if deficient at all, merely lacks the detail more appropriately left for amplification through discovery and thus, a more precise statement is not warranted at this time.

Plaintiffs correctly point out that Rule 12(e) motions are looked upon with disfavor and are rarely granted in light of the notice-pleading framework of the federal rules. *Choat v. Rome Industries, Inc.,* 480 F.Supp. 387, 391 (N.D.Ga.1979). A complaint need only contain a short, plain statement of the claim, indicating that plaintiff is entitled to relief, and giving defendant fair notice of the nature of plaintiff's grievance. Fed.R.Civ.P. 8; *McDougall v. Donovan,* 552 F.Supp. 1206, 1208 (N.D.Ill.1982). The basis for granting a motion for a more definite statement is unintelligibility, not mere lack of detail. *Cromwell v. Ward,* 425 F.Supp. 97, 99 (W.D.N.Y.1977); 2A Moore's Fed.Prac.2d § 12.8, p. 2395 (1982).

Defendants contend that the references in paragraph 13 to "promises," "employees," and "representations," must be made more specific in terms of dates, times, names and places. We disagree. Such details are the central object of discovery, and need not be pleaded. Plaintiffs have adequately put defendants on notice of the nature of their

claims, and a responsive pleading is required at this time.

Defendants' motion for a more definite statement is, therefore, denied.

### B. *Failure to State a Cause of Action for Negligence; Count II*

Count II of the complaint sounds in tort, *viz.* negligent repair and rehabilitation of the Towers. Defendants argue that the gravamen of plaintiffs' claims is an alleged failure by defendants to fulfill certain promises, representations and agreements concerning repair and rehabilitation of the condominium property. As such, defendants argue, plaintiffs' claims are strictly contractual in nature and do not state a tort claim for negligence.

Plaintiffs counter that they are not limited to a contractual theory of recovery, but may also, due to the relationship extant between themselves and defendants, seek recovery for breach of an affirmative duty owed them by defendants to exercise reasonable care in the construction and maintenance of the condominium project.

■ Plaintiffs' complaint cannot be dismissed pursuant to Rule 12(b)(6) for failure to state claim unless it appears beyond doubt that they can prove no facts in support of their claims which would entitle them to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). It is true, as defendants assert, that the interests sought to be protected by the law of contracts and those of tort law, are distinct. The omission to perform a contractual obligation does not ordinarily create a cause of action in tort as between the contracting parties. *Wolfe v. Continental Casualty,* 647 F.2d 705, 710 (6th Cir.1981) (applying Ohio law). Rather, an action for breach of contract is the recognized and appropriate avenue of relief. *Id.* Moreover, "[t]he mere negligent breach of a contract, *absent a duty or obligation imposed by law independent of that arising out of the contract itself,* is not enough to sustain an action sounding in tort." *Heckrotte v. Riddle,* 224

Md. 591, 168 A.2d 879, 882 (Md.1961) (emphasis added); *see Matyas v. Suburban Trust Co.,* 257 Md. 339, 263 A.2d 16, 19 (Md.1970).

■ But, if a plaintiff can establish the existence of such an independent legal duty, he may maintain an action in tort, even though the acts complained of also constitute a breach of contract. *Charles v. Onondaga Community College,* 66 A.D.2d 144, 418 N.Y.S.2d 718 (4th Dep.1979), *app. dismd.,* 48 N.Y.2d 650, 421 N.Y.S.2d 200, 396 N.E.2d 482 (1979). The crucial question in this case, then, is whether plaintiffs can show that defendants' owed them a legal duty, independent of any contractual obligation, to exercise reasonable care in carrying out the renovation and repair of the Towers.

Because the answer to this question depends upon the nature of the relationship between each plaintiff and the defendants, we divide our analysis accordingly.

### 1. *The Tenant Association*

As alleged in the complaint, plaintiff Tenant Association is composed of people who were tenants at the time of, and prior to, conversion of the Towers to condominium ownership. Presumably, therefore, defendants assumed the status of landlord vis-a-vis plaintiff's members who did not purchase condominium units, but instead wished to complete their lease terms.

■ It is well-settled that, although a landlord generally owes no duty to his tenants to renovate the leased premises, once he begins to renovate and improve the property, he owes a duty to his tenants to exercise reasonable care in the performance of those activities. *See* 49 Am.Jur.2d, Landlord and Tenant, §§ 793–98 (1970), and cases cited therein. Breach of that duty gives rise to a cause of action in negligence on behalf of tenants whose person, property or leasehold rights have been damaged thereby. *Id.* Such an action arises independent of the lease contract. *Id.*

It is also true in the District of Columbia, that the local housing regulations impose a duty of reasonable care on a landlord, the breach of which can result in landlord liability to his tenants for negligence. *Scoggins v. Jude,* 419 A.2d 999 (D.C.1980). In other words, a landlord has a duty to repair housing defects which cause the building to fall below code standards. *See Javins v. First National Realty Corp.,* 428 F.2d 1071 (D.C.Cir.), *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). Failure to remedy the deficiencies within a reasonable time after being requested by a tenant to do so, may render the landlord liable for breach of the duty of reasonable care, i.e. for negligence. *George Washington University v. Weintraub,* 458 A.2d 43, 50 (D.C.1983) (opinion of Judge Ferren dissenting on other grounds).

It follows that if a landlord/tenant relationship exists (or did exist) between the defendants and the members of the Tenant Association, and the tenant members suffered the damages alleged in the complaint (including the failure of the landlord to comply with the D.C. housing regulations), then the Tenant Association has a viable right to recovery under the legal principles cited above. It would be premature, at this juncture, therefore, to conclude that it is beyond doubt that the Tenant Association can prove no case in negligence against defendants. Thus, the motion of defendants to dismiss Count II of the complaint, as brought by the Tenant Association, must be denied.[1]

### 2. The Condominium Association

With respect to the Condominium Association, defendants assert that, absent some contractual commitment, there is no independent obligation on their part to renovate or repair the condominium property. In defendants' view, there is, therefore, no legal duty of care owed plaintiff separate from that which is implied in every construction contract, *viz.* the duty to exercise reasonable care and comply with workmanlike standards. The proper remedy for breach of that duty, they maintain, is an action for breach of contract, not a tort suit grounded in negligence.

Plaintiff Condominium Association counters that, (1) a special relationship exists between the defendants, as experienced and professional developers of residential real estate, and the condominium purchasers, which gives rise to a duty on the part of defendants to use reasonable care in the physical development of the property, and (2) an independent duty of care arises through the public dissemination by the defendants of the Public Offering Statement, which embodied assurances that certain repairs, renovations and improvements would be made to the Towers complex.

While we agree with plaintiff's contention that an independent duty of care exists, and, therefore, the complaint states a claim in negligence, our reasons are somewhat different than those expressed above.

The primary authority on which we base our conclusion is *Arnold's Hofbrau, Inc. v. George Hyman Const. Co., Inc.,* 480 F.2d 1145 (D.C.Cir.1973). Plaintiff in that case, a restaurant owner and lessee, sued its lessor and a construction company doing work on property adjacent to the leased premises, for negligently causing damage to, and failing to adequately repair, the floor of plaintiff's restaurant. The trial court set aside a jury verdict in plaintiff's favor as against the lessor, on the grounds that the lessor had no duty, contractual or otherwise, to repair the damaged property, and, as a result, plaintiff's negligence claims were foreclosed as a matter of law. *Id.* at 1148.

The Court of Appeals disagreed with the trial court, finding that:

Two rules of law point to the opposite result. The first is the familiar statement that one who undertakes to act has a duty to act carefully and if he fails to do so, he may be held liable in negligence. . . . The second is the principle of

---

1. Should it appear after further discovery that facts have not been developed which would support the claims of The Tenant Association, defendants, of course, will be free to renew their motion to dismiss as to The Tenant Association.

promissory estoppel, i.e., that one who promises another to act but fails without excuse to do so is liable to the party who has relied upon such promises to his detriment... 'Estoppel is a tort doctrine. The rationale ... is that justice requires the defendant to pay for harm caused by foreseeable reliance upon the performance of his promise...'

*Id.* at 1148 (citations omitted); *see also Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986, 991 (D.C.1980) (one who assumes to act, even though gratuitously, may thereby become subject to duty of acting carefully, if he acts at all) and *Security National Bank v. Lish,* 311 A.2d 833, 834 (D.C.1973) (same). The Court reasoned that since, (1) defendant lessor undertook the task of repairing the damaged premises, and (2) defendant made assurances, on which plaintiff relied to its detriment, that the floor would be repaired and brought into compliance with the relevant provisions of the D.C. Building Code, plaintiff had a viable negligence claim against the lessor. The case at bar has much in common with *Arnold's Hofbrau.*

First, plaintiff Condominium Association alleges that defendants undertook to repair and renovate the Towers, and that the work was negligently performed, resulting in damage to plaintiff's property and continuing violations of applicable housing regulations. Second, plaintiff asserts in its complaint that defendants promised, orally and in writing, to rehabilitate, renovate and repair the Towers to the point of making the property one of D.C.'s premier residential complexes. Finally, the Condominium Association contends that its members relied to their detriment on those assurances inasmuch as, (1) they relinquished their statutory right as former tenants to purchase the entire complex before conversion, and (2) they purchased individual condominium units under false pretenses since the promised work has not been done.

 Under the principles enunciated in *Arnold's Hofbrau,* a legal duty owing to plaintiff, independent and distinct from any contractual obligations which might also be involved, arises out of defendants' alleged conduct in handling the conversion of the Towers. It is clear, therefore, that plaintiff has stated a cause of action in negligence. *See also, Navajo Circle, Inc. v. Development Concepts Corp.,* 373 So.2d 689 (Fla.App. 1979) (condominium association and unit owner stated cause in negligence against builder for faulty construction of roof). Accordingly, defendants motion to dismiss Count II of the complaint, as brought by the Condominium Association, must be denied.

C. *Failure to State a Cause of Action for Breach of Implied Warranties; Count III*

Defendants have also moved under Rule 12(b)(6) to dismiss Count III of the complaint, which purports to state a claim for breach of implied warranties of merchantability, reasonable fitness for ordinary use, and compliance with workmanlike standards. They argue that such warranties do not apply to the conversion and sale of condominiums in the District of Columbia, and plaintiffs have, therefore, failed to state a claim in Count III upon which relief can be granted.

Relying on *Berman v. Watergate West, Inc.,* 391 A.2d 1351 (D.C.1978), plaintiffs counter that products liability principles, and thus implied warranties, have been adopted in the District of Columbia and applied to real estate transactions. They argue that the conversion and sale of condominium units is exactly the sort of transaction contemplated in *Berman* to be attended by implied warranty protection for purchasers.

Again our analysis will focus separately on the relationship of each plaintiff vis-a-vis the defendants, regarding the applicability of implied warranty principles.

1. *The Tenant Association*

 A warranty of quality and fitness has long been implied in residential lease transactions in this jurisdiction. *Javins v. First National Realty Corp.,* 428 F.2d 1071 (D.C.Cir.), *cert. denied,* 400 U.S. 925, 91

S.Ct. 186, 27 L.Ed.2d 185 (1970); *George Washington University v. Weintraub,* 458 A.2d 43 (D.C.1983). In order to fulfill this warranty of habitability, landlords must substantially comply with the Housing Regulations of the District of Columbia.[2] *Javins, supra* at 1081; *Weintraub, supra* at 438–39. Thus, landlords are under a continuing duty during the lease term to repair and renovate the leased premises, when necessary, to keep the dwelling in compliance with local codes. *Javins, supra* at 1081. This warranty obligation cannot be disclaimed or waived in a lease contract. *Javins, supra* at 1082; *Weintraub, supra* at 441. Moreover, breach of the warranty of habitability gives rise to an affirmative cause of action for damages on the part of a tenant as against the careless landlord. *Weintraub, supra* at 440.[3]

As noted previously, plaintiff Tenant Association has alleged that its members were tenants at the time defendants took control of the Towers. Plaintiff asserts that defendants have failed to adequately repair and rehabilitate the complex in order to maintain strict compliance with relevant housing regulations. A detailed list of the alleged defects and deficiencies is appended to the complaint. The list includes several instances of "extensive water leakage" in and around the buildings, as well as various "hazardous conditions," including unsafe stairways, elevators and hallways, which allegedly render the complex structurally unsound.

**2.** These regulations provide, *inter alia,* that:
> [e]very premises ... shall be maintained and kept in repair so as to provide decent living accommodations for the occupants. This part of the Code contemplates more than mere basic repairs and maintenance to keep out the elements; its purpose is to include repairs and maintenance designed to make a premises or neighborhood healthy and safe.

5G DCRR § 2501.

**3.** As noted in *Javins,* 428 F.2d at 1082 n. 63, and *Weintraub,* slip op. at 440 n. 5, more than *de minimus* violations of the Housing Regulations are required to establish breach of the implied warranty of habitability.

**4.** D.C.Code § 45–1847(b) provides in relevant part:

Accepting these allegations as true, as we must for purposes of ruling on a motion to dismiss, we believe that they are sufficient under *Javins* and *Weintraub* to state a claim for breach of implied warranty. Accordingly, defendants' motion to dismiss Count III of the complaint, as brought by the Tenant Association, must be denied.

### 2. The Condominium Association

As to the Condominium Association, defendants assert that the only implied warranty obligations owed by them to unit owners are those found in the D.C. Condominium Act of 1976, D.C.Code § 45–1801 *et seq.,* at Section 307(b), D.C.Code § 45–1847(b).[4] Defendants argue that, since the D.C. Council had the opportunity to include in the Condominium Act the products liability principles plaintiff seeks to have applied in this case, but failed to do so, we must read that inaction as an explicit legislative rejection of those principles. In defendants' view, the comprehensive remedial scheme set up in the Condominium Act would be thwarted and set adrift on a rough, uncharted legal sea if we uphold plaintiff's common law implied warranty claims. We do not share defendants' pessimistic outlook.

At the outset we note that defendants have misread the legislative history of D.C. Code § 45–1847(b). They contend that when the D.C. Council passed the Condominium Act in 1976, the Council considered

> [t]he declarant shall warrant against structural defects, each of the units for 1 year from the date each is conveyed and all of the common elements for 2 years.... For purposes of this section, structural defects shall be those defects in components constituting any unit or common element which reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of all or part of the structure and which require repair, renovation, restoration, or replacement. Nothing in this subsection shall be construed to make the declarant responsible for any items of maintenance relating to the units or common elements.

This section is the basis for Count V of the Complaint.

and rejected the warranty obligations on which plaintiff relies. This conclusion is based upon the following two premises: (1) the Virginia Condominium Act, Va.Code § 55–79.39 *et seq.*, from which the D.C. law is primarily drawn, *see* Report on Bill 1–179 at 2, June 16, 1976, *as amended* August 16, 1976, contains nearly the same warranty language plaintiff uses, *see* Va.Code § 55–79.79(b), which provides in relevant part, "[i]n the case of each unit the declarant shall also warrant that the unit is fit for habitation and constructed in a workman-like manner so as to pass without objection in the trade," and (2) the D.C. warranty section is identical to the Virginia provision *except for* the sentence quoted above. Thus, defendants argue, the D.C. Council must have consciously rejected the additional warranty obligations, and it would, accordingly, be improper to judicially impose them at this time.

The flaw in defendants' argument is that the Virginia Condominium Act did not include the disputed sentence in 1976 when the D.C. Council enacted the local condominium law. The additional warranty sentence was added as an amendment to the Virginia statute in 1980. *See* note following Va.Code § 55–79.79. Thus, it would have been impossible for the D.C. Council to have *considered and rejected* the disputed provision in 1976. There are, accordingly, no indications of legislative opinion concerning the precise question presented, *viz.* whether products liability principles, and thereby implied warranties of quality and fitness, attend the conversion and sale of condominium units in the District of Columbia other than through the Condominium Act.

Further, there are no reported decisions on either the D.C. law or the Virginia statute which construe the scope and effect of the warranty provisions in each. We must, therefore, look to the general products liability law of the District of Columbia, and, more specifically, how it has been applied to

real estate transactions, in order to resolve the issue *sub judice.*

Plaintiff Condominium Association correctly points out that *Berman v. Watergate West, Inc., supra,* is the leading case in this area. Plaintiff in *Berman* was a tenant/shareholder in defendants' cooperative apartment complex. She sued the cooperative and her immediate vendor, a real estate agency, for breach of implied warranties of fitness and merchantability, alleging that her apartment was defective inasmuch as it was 50% uninhabitable due to a faulty air conditioning system. Following what it recognized as a properly growing trend, the District of Columbia Court of Appeals concluded that products liability principles apply to the sale of newly constructed homes and cooperative units. As a result, the Court held that plaintiff had a viable cause of action grounded in breach of implied warranty/strict liability in tort.[5]

Defendants argue that *Berman* is inapposite to the present case because, (1) *Berman* involved cooperative units, not condominiums, (2) that case concerned new construction, not the conversion of existing apartment buildings to condominium ownership, and (3) plaintiff in *Berman* would have been left without a remedy had the Court rejected her claims, whereas here there is a complex statutory scheme and an explicit provision through which the Condominium Association can obtain relief. We are not persuaded by defendants' arguments.

■ First, defendants' contention that the principles enunciated in *Berman* cannot apply to condominium transactions because they do not involve cooperative units, is specious. The Court of Appeals in *Berman* specifically relied on cases from other jurisdictions which held that the law of products liability applies to the purchase and sale of condominium units. *See* 391 A.2d at 1357–58; *Gable v. Silver,* 258 So.2d 11 (Fla.App.), *cert. discharged,* 264 So.2d 418 (Fla.1972). More importantly, however, the Court stated:

---

5. In the District of Columbia, these theories of products liability are conceptually identical. *Fisher v. Sibley Memorial Hospital,* 403 A.2d 1130, 1133 (D.C.1979); *Cottom v. McGuire Funeral Service, Inc.,* 262 A.2d 807, 808 (D.C. 1970).

[i]f the sponsor of the Watergate project had been a single corporate entity, and the sponsor had built the complex itself and sold the individual units outright to the consumer, the sponsor would be liable under products liability theory to the extent the units proved defective.

391 A.2d at 1359. The situation described above is substantially the scenario presented by the development and sale of a new condominium project. Consequently, we conclude that *Berman* is clearly applicable to condominium cases.[6]

Defendants' remaining arguments are more substantive, but no more compelling. The "new construction" versus "conversion" distinction defendants attempt to draw is unconvincing. The cases they cite in support of this line of analysis involved *subsequent* purchasers of *used* homes.[7] The circumstances at bar are significantly distinguishable.

■ Plaintiff alleges that, as part of their development and renovation of the Towers, defendants undertook extensive rehabilitative construction. It is this "new" construction that plaintiff charges is defective. In addition, defendants are the actual developers/vendors of the project, and the Condominium Association's members include first purchasers. Even though many unit owners might have been previous residents of the Towers, they were entitled to rely on the good faith and expertise of the defendants to provide quality renovations, when those former tenants made their ultimate decisions to purchase units outright.

■ Under these circumstances, we perceive no meaningful difference between a newly constructed apartment building and an old building that has been significantly refurbished and reconstructed, for purposes of imposing liability for defective conditions. While defendants may or may not be liable under products liability principles for conditions that pre-existed their involvement with the Towers, they are certainly responsible for the quality and results of the work they, in fact, undertook. Those renovations and repairs are, in purpose and effect, tantamount to the new construction at issue in *Berman*. We find nothing in the law of products liability to the contrary.

Finally, defendants argue that because plaintiff has an adequate remedy available through the Condominium Act, there is no reason to create additional, and as yet, undeveloped, avenues of relief through products liability law. They maintain that, like the enforcement machinery set up in certain federal regulatory statutes, the Condominium Act was intended to be the exclusive vehicle for addressing the liability of condominium developers to unit purchasers.

■ Plaintiffs counter, and we agree, that in order for the Condominium Act to have the preclusive effect defendants desire, the intention to do so must be found in the Act or its legislative history. This is due to the well-established maxim of statutory construction that statutory remedies are presumed to be cumulative to the common law, and do not abolish common law remedies unless so declared in express terms or by necessary implication. *Mendes v. Johnson,* 389 A.2d 781, 786 (D.C.1978); *James v. Churchill Downs, Inc.,* 620 S.W.2d 323, 324 (Ky.App.1981).

■ *Berman* teaches that products liability principles can apply to circumstances such as those presented here. Consequently, plaintiff's implied warranty cause of action is grounded in the common law of products liability. Since we see nothing in the Condominium Act, or its history, which indicates that it was meant to preempt and/or preclude common law remedies, we find defendants' final argument unpersuasive. Moreover, inasmuch as the District of

---

**6.** At least one court agrees with our conclusion. *Del Mar Beach Club v. Imperial Contracting Co.,* 123 Cal.App.3d 898, 913, 176 Cal.Rptr. 886, 892 (1981).

**7.** We note that there is a growing minority view that extends implied warranty/strict liability protection against latent defects to subsequent purchasers of used homes. *See* Anno., Latent Defects-Builder's Later Liability, 10 A.L. R.4th 385 (1981); *Blagg v. Fred Hunt Co., Inc.,* 272 Ark. 185, 612 S.W.2d 321 (Ark.1981).

Columbia Uniform Commercial Code warranty provisions, D.C.Code §§ 28:2–314 and 28:2–315, do not preclude claims grounded in negligence and/or strict liability in tort, *see Cottom, supra* at 808–09; *Berman, supra* at 1357, it would be unjust and inequitable after *Berman* to find that the D.C. Condominium Act represents the sole avenue of relief for condominium purchasers who suffer damages as a result of defective units.[8]

For the reasons set forth above, we conclude that (1) the strict liability/implied warranty principles announced in *Berman* apply to the conversion and sale of condominium units where, as here, the builder/vendor/developer has undertaken significant renovation and rehabilitation of the property, and (2) these products liability principles give rise to an independent cause of action on the part of unit owners as against the converting/developing entity or entities, for defective condominiums. Thus, defendants' motion to dismiss Count III, as brought by the Condominium Association, must also be denied.[9]

### III. CONCLUSION AND ORDER

In light of the foregoing, it is, this 5th day of May, 1983

ORDERED that defendants' motion for a more definite statement be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that defendants' motion to dismiss Counts II and III of the complaint be, and the same hereby is DENIED; and it is

FURTHER ORDERED that defendants' motion to dismiss Count V of the complaint as brought by the Tenant Association be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Count V, insofar as it is brought by the Tenant Association, be, and the same hereby is, DISMISSED.

---

**8.** In Florida, one of the leading jurisdictions in the development of condominium law, statutory and common law implied warranty causes of action coexist. *Greenberg v. Johnston,* 367 So.2d 229 (Fla.App.1979).

**9.** Defendants additionally contend, and plaintiffs concede, that the Tenant Association does not have standing to sue under the warranty provisions of the Condominium Act. Such a cause of action is attempted in Count V of the complaint. We will, therefore, dismiss Count V as brought by the Tenant Association, retaining only the claims of the Condominium Association in that Count.