**Mary BARBER, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RESOURCES, Respondent.**

**No. 9180.**

District of Columbia Court of Appeals.

Argued Oct. 9, 1975.

Decided Aug. 3, 1976.

Ira W. Still, III, Gaithersburg, Md., for petitioner. Margaret Stone, Washington, D. C., was on the brief for petitioner.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before YEAGLEY and HARRIS, Associate Judges, and KORMAN, Associate Judge, Superior Court of the District of Columbia.*

KORMAN, Associate Judge:

Petitioner seeks review[1] in this court of a final order of the Associate Director for Planning and State Agency Affairs of the District of Columbia Department of Human Resources (hereinafter, the Department) which denied petitioner's claim for emergency public assistance to pay both rental arrearages and moving and storage costs. We hold that, since petitioner was evicted from her residence before the Department could act on the application, her claim for past-due rent became moot; and that her claim for costs of moving and storing her furniture subsequent to the eviction was properly rejected because such expenditures are not authorized under governing regulations. Accordingly, we affirm.

Following a determination by her physician that, because of a medical impairment, petitioner was no longer able to work, she, on June 15, 1973, filed with the Department an application for public assistance. That application was received at the central office of the Department's Payment Assistance Administration on June 21, 1973. Approximately one month later, the Payment Assistance Administration insti-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. D.C.Code 1973, §§ 1–1510 and 11–722.

tuted a decentralization program under which pending public assistance applications were transferred from the central office to various neighborhood centers.

Not until November 20, 1973, was petitioner notified of the necessity to file a medical report in support of her claim of unemployability, and on December 12, 1973, Dr. John McBride submitted such a report on her behalf. Upon evaluating the report, a medical review team determined that petitioner was in fact employable and she was advised on January 11, 1974, that if she still claimed an inability to work she should submit another medical report. A second medical report was submitted and resulted, on January 22, 1974, in her application being approved. Her first public assistance check was received by her on February 1, 1974.

While her application was being processed, petitioner became delinquent in her monthly residential rental payments, her landlord obtained a judgment for possession of the premises, and, on January 17, 1974, she was served with an eviction notice. In an attempt to forestall eviction, petitioner applied on the following day for emergency assistance to cover the past-due rent. Before any definitive action could be taken on this application by the Emergency Assistance Service, she was, on January 22, 1974, evicted. A former employer of petitioner arranged to have her belongings moved by Acute Van Company and stored by the D Street Storage Warehouse Company. Petitioner then went to live with a cousin.

In June 1974, petitioner was notified that, unless accrued storage charges of $222.00 were paid in full, her furniture would be sold to satisfy the combined moving and storage debt. She then sought emergency assistance to cover the cost of redeeming her belongings. Although her application was rejected, she paid the moving bill and arranged to have the ware-house company continue to store her furniture.

On July 11, 1974, petitioner requested an administrative or "fair" hearing challenging both the delay in processing her public assistance application and the denial of her two requests for emergency assistance, which hearing was held on October 2, 1974. In proposed findings of fact and conclusions of law, the hearing examiner recommended that, due to the delay in processing her public assistance application beyond the thirty-day period prescribed by regulation,[2] she be granted six months of retroactive public assistance benefits. He recommended further that her claim for emergency benefits be denied. The bases of the latter conclusions were that the rent claim was moot and that the claim for moving and storage charges was not authorized under the applicable Commissioner's Order. Petitioner submitted timely exceptions, but, on December 23, 1974, said findings of fact, conclusions of law and recommendations were accepted and adopted by the Associate Director of the Department.

Seeking reversal thereof by this court, petitioner argues first that the Department improperly denied her emergency assistance application for rent since a controversy cannot be rendered moot as long as the decisionmaker has the power, notwithstanding intervening events, to grant relief in some form appropriate to the nature of the case. She contends that, if the Department had granted the emergency assistance, her subsequent eviction and resultant storage of her belongings would never have occurred. Additionally she claims that if her right to request a fair hearing to challenge a denial of assistance is deemed moot, then her right of appeal granted by regulation[3] is rendered null and of no effect.

■ We find petitioner's arguments unconvincing. It is well settled "that if,

---

2. District of Columbia Regulation No. 69–406, § 2 (July 25, 1969).

3. District of Columbia Regulation No. 68–641, § 1 (Sept. 27, 1968).

pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, or renders a decision unnecessary, the question becomes moot and the appeal will be dismissed." *Smith v. Worksman,* D.C.Mun.App., 99 A.2d 712 (1953); *McChesney v. Moore,* D.C.Mun.App., 78 A.2d 389, 390 (1951). Such, under the facts, is the case presented here. Although petitioner filed application for emergency assistance to cover her past-due rent the day after she received the eviction notice, she was evicted before any definitive action could be taken thereon.[4] It should be obvious that monies earmarked to relieve citizens faced with emergencies should not be available to them as compensation or balm once the moment of crisis has passed.

With reference to the denial of her application for emergency assistance to pay the moving and storage fees, petitioner maintains that if the Department had carried out its obligation to process within the thirty-day period prescribed by regulation her general public assistance application, the moving and subsequent storage charges would never have arisen. She insists that her "parade of horrors" was proximately caused by the "reprehensible" delay of the Department, and concludes that equitable principles dictate that she be reimbursed for the moving and storage expenses.

Assuming that petitioner's plight may have resulted from the Department's dilatoriness in processing her public assistance application (for which she was, in fact, later compensated by payment for six months of retroactive benefits), examination of the applicable guidelines leads to the conclusion that the delay does not require allowance for her moving and storage expenses. To hold otherwise would be a blatant disregard of the law.

Pursuant to an authorization from Congress, the District established an emergency assistance program authorizing aid not exceeding thirty days pending completion of investigation once eligibility for public assistance has been established.[5] The Commissioner of the District of Columbia thereafter authorized the Department of Public Welfare[6] to administer a program of emergency assistance to persons "living in the District of Columbia who are faced with a crisis situation involving a temporary financial problem which, if left unresolved, would lead to deprivation of basic necessities, family breakdown, or the continued separation of a family."[7] Petitioner argues that the words "deprivation of basic necessities" required the Department to pay her moving and storage expenses.

The Department, however, construed the language otherwise. In its Handbook of Public Assistance (HPA), it established guidelines outlining when emergency assistance monies may be used to pay moving expenses. Although HPA–3, Supp. 5, Pt. III F, permits payment of "moving costs to move into public or private housing", the Department's Informational Bulletin No. 72–19, Part V, specifically provides in subparagraph A that "moving costs can be paid through E.A.S.[8] *only* when use is made of the contract mover—Greenwood's Transfer, Inc." [Emphasis in original.]

Informational Bulletin No. 72–19, Part VI, further delineates the circumstances

---

4. In fact, only four days elapsed—including a weekend—from the date of application to the date of eviction.

5. D.C.Code 1973, § 3–209, provides:
   The Commissioner may grant emergency public assistance pending completion of investigation when eligibility has been established pursuant to section 3–203: *Provided,* That such emergency assistance shall not be granted in any case for a period exceeding thirty days.

6. Predecessor of the Department of Human Resources.

7. Commissioner's Order No. 69–263 (May 29, 1969).

8. Emergency Assistance Service.

under which emergency assistance monies may be utilized to pay storage charges:

> The Social Rehabilitation Administration has no authority to pay for storage of clients' furniture, except in those situations where families are entering the Family Emergency Shelter. In those cases, arrangements for storage is the responsibility of staff at the Shelter. Storage costs for other clients cannot be authorized and, where storage is needed, service staff should explore community resources.

■ Unless it is plainly erroneous or inconsistent with the regulation, deference is properly accorded an agency's interpretation of an administrative regulation it enforces. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Taylor v. District of Columbia Board of Zoning Adjustment*, D.C.App., 308 A.2d 230, 232, 233–34 (1973); *Hobson v. District of Columbia*, D.C.App., 304 A.2d 637, 640 (1973); *Gulf Oil Corp. v. Hickel*, 140 U.S.App.D.C. 368, 372, 435 F.2d 440, 444 (1970). Petitioner argues that the Department's construction of Commissioner's Order No. 69–263 as manifested by the foregoing excerpts from Informational Bulletins is patently unreasonable. A careful analysis of that construction leads us to disagree.

■ Practical considerations justify limiting payments of emergency assistance monies to only "the contract mover." By negotiating a favorable contract with a particular moving company, the Department is able to conserve available funds for such expenses and thereby provide moving services for a greater number of needy people. Indiscriminate employment of other movers could plausibly cause a loss of control over various facets of the moving operation [9] and result in wasteful expenditures of money as well as higher prices.

Similarly, pragmatic motivation warrants restriction of emergency assistance grants for storage fees to instances "where families * * * enter the Family Emergency Shelter." When the Shelter makes the storage arrangements, the Department oversees the costs and the length of time the belongings remain in storage.[10] If the Department were obligated to pay storage fees for persons who moved elsewhere than the Family Shelter, storage costs could quite likely be higher and the length of storage time could exceed thirty days,[11] all resulting in a diminution of funds available to help other persons requiring assistance. Accordingly, we conclude that the Department's interpretation of Commissioner's Order No. 69–263 is not plainly erroneous and is entitled to due deference.

Upon that conclusion, the mootness of her claim for past-due rent, and the further reason that petitioner's claim for emergency assistance covers a period far in excess of the thirty-day statutory limitation upon any claim for emergency public assistance,[12] the decision of the Department is

*Affirmed.*

9. *I. e.*, the size of the truck, the number of employees, the moving time, the use of packing-unpacking services, etc.

10. The Handbook for Public Assistance (HPA–3, Supp. 4, Pt. III) provides in part:
    A. The Temporary Emergency Family Shelter provides 24-hour Service. . . . Every effort shall be made to re-establish the family in the community within the earliest possible time.
    *   *   *   *   *
    D. The Shelter will arrange for storage of household furnishings and personal belongings for families admitted to the family shelter. The time that furniture may be stored is limited to no more than thirty (30) days under normal circumstances, but storage will *never* be authorized *for more than the month in which the client leaves the Family Shelter*. . . . [Emphasis of *never* in original—remainder supplied.]

11. In fact, petitioner's belongings were still in storage at the time of oral argument.

12. D.C.Code 1973, § 3–209.