Donald Jeremy STUTSMAN, Appellant,

v.

KAISER FOUNDATION HEALTH PLAN OF the MID–ATLANTIC STATES, INC., et al., Appellees.

KAISER FOUNDATION HEALTH PLAN OF the MID–ATLANTIC STATES, INC., et al., Appellants,

v.

Donald Jeremy STUTSMAN, Appellee.

Nos. 87–143, 87–265.

District of Columbia Court of Appeals.

Argued Feb. 9, 1988.
Decided July 14, 1988.

Thomas P. Mains, Jr., Alexandria, Va., with whom Robert Cadeaux, Washington, D.C. was on the brief, for Donald Jeremy Stutsman.

Richard W. Boone, with whom W. Allen Overton, Arlington, Va. and R. Harrison Pledger, McLean, Va. were on the brief in No. 87-265, for Kaiser Foundation Health Plan and Capital Area Permanente Medical Group, P.C.

Before FERREN, BELSON and ROGERS, Associate Judges.

ROGERS, Associate Judge:

These consolidated appeals present claim preclusion and choice of law issues. Donald Jeremy Stutsman (Stutsman) filed two lawsuits in the District of Columbia against Kaiser Foundation Health Plan and Capital Area Permanente Medical Group (Kaiser),[1] two District of Columbia corporations, as a result of the death of his wife, Mary Thomas Stutsman. In appeal No. 87-143, Stutsman, the executor of the estate of his deceased wife, appeals the dismissal of his wrongful death action, which the trial court dismissed under *res judicata* principles as a result of the prior denial of Stutsman's motion to add a wrongful death claim in his consolidated survival and loss of consortium action against Kaiser. In appeal No. 87-265, the consolidated action, Kaiser appeals from the judgment for loss of consortium on the ground that Virginia law, which bars the action, should have been applied instead of District of Columbia law. We dismiss appeal No. 87-143 as moot; Stutsman did not file a cross-appeal from the denial of his motion to amend the complaint after he received judgment in the consolidated action, and since his wrongful death claim merged into that judgment, his separate cause of action was extinguished. In appeal No. 87-265 we reverse the judgment against Kaiser for loss of consortium because Virginia law governed the action and barred it.

I.

Prior to her death, Mary Thomas Stutsman sued Kaiser in the District of Columbia for medical malpractice. Kaiser filed an interlocutory appeal on the ground that Virginia tort law, which imposed a ceiling on medical malpractice recovery, applied because the alleged malpractice had occurred in Virginia. This court disagreed, holding that the District of Columbia's tort law applied. *Kaiser–Georgetown Community Health Plan v. Stutsman*, 491 A.2d 502, 511 (D.C.1985) (hereinafter *Stutsman*

---

1. For the sake of clarity, we refer to Kaiser and     Capital as "Kaiser".

*I* ).[2]

While the interlocutory appeal was pending, Stutsman filed a separate action against Kaiser for loss of consortium due to the physical injuries to his wife, Mary. Upon her death in Virginia, Stutsman became the plaintiff in the malpractice action pursuant to the District's survival statute, D.C. Code § 12–101 (1981), and that action was consolidated with his action for loss of consortium.

In July, 1985, Stutsman filed a motion to amend the malpractice complaints to add a claim for wrongful death under the Virginia Wrongful Death Act, VA. CODE ANN. § 8.01–50 et seq. (1984 Repl.Vol.), since the District's Wrongful Death Act, D.C. Code § 16–2701 et seq. (1981), applied only to deaths occurring in the District of Columbia. Judge Shuker denied the motion on September 30, 1985, on the ground that under *Stutsman I* District of Columbia law applied to the malpractice action and thus precluded Stutsman's reliance on Virginia law as the basis of his wrongful death cause of action.[3] Four and one-half months later, on February 14, 1986, Stutsman filed a separate action against Kaiser for his wife's wrongful death.

In April, 1986, the consolidated survival/loss of consortium action went to trial. The jury awarded Stutsman $401,482 on the survival claim and $250,000 for loss of consortium. His motion for a new trial on damages, and Kaiser's motion for judgment notwithstanding the verdict, were denied on February 4, 1987. Kaiser appealed the award of damages for loss of consortium on March 3, 1987; Stutsman did not cross-appeal.

Kaiser also filed, on July 25, 1986, a motion to dismiss the wrongful death action on the ground that Judge Shuker's denial of Stutsman's motion to amend the malpractice action complaint constituted

the law of the case and required dismissal of the separately filed wrongful death action. Kaiser further filed a motion for summary judgment on the ground that Judge Shuker's denial, which had ripened into a judgment following the jury verdicts, constituted *res judicata*. On January 6, 1987, Judge Hamilton granted Kaiser's motion to dismiss the wrongful death action on the ground that it was precluded on *res judicata* principles. Stutsman appealed from that order on February 4, 1987.

## II.

### *Dismissal of the Wrongful Death Action*

Stutsman contends that Judge Hamilton erred in ruling that Judge Shuker's denial of Stutsman's motion to amend the malpractice complaint required dismissal of the wrongful death action. He argues that rulings in one lawsuit have no binding effect in a separate action. We do not reach the merits of this contention. The propriety of Judge Hamilton's dismissal of the wrongful death action became moot when the time for filing an appeal from the judgment in the consolidated action expired on March 4, 1987. All of Stutsman's rights arising out of Kaiser's treatment of his wife were merged in that judgment, and therefore even if this court were to hold that Judge Hamilton erroneously dismissed the wrongful death action, that holding would have no effect, since principles of claim preclusion would prevent Stutsman from maintaining any further action arising out of Kaiser's negligent treatment of his wife.

It is well settled that once a claim is finally adjudicated, the doctrine of claim preclusion will operate to prevent the same parties from " 'relitigation of not only those matters actually litigated but also

---

**2.** The facts giving rise to the claim for medical malpractice are set forth in *Stutsman I, supra,* 491 A.2d at 504–05.

**3.** Judge Shuker noted that in Virginia there exists only an action for wrongful death and no separate survival action, citing *Wilson v. Whittaker,* 207 Va. 1032, 154 S.E.2d 124 (1967), and thought Stutsman sought "unjustly [to] bestow

upon him[self] the best of both worlds." *See also Higgins v. Washington Metropolitan Area Transit Authority,* 507 F.Supp. 984, 986 (D.D.C. 1981) (D.C. Wrongful Death Statute, by its own terms, is limited to "an injury done or happening within the limits of the District." D.C. Code § 16–2701.)

those which might have been litigated in the first proceeding.'" *Jonathan Woodner Co. v. Adams,* 534 A.2d 292, 295 n. 6 (D.C.1987) (quoting *Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 473 n. 10 (D.C. 1983)); *see also Rhema Christian Center v. District of Columbia Bd. of Zoning Adjustment,* 515 A.2d 189, 192–93 (D.C. 1986); *Henderson v. Snider Bros., Inc.,* 439 A.2d 481, 485 (D.C.1981) (en banc). Whether a party wins or loses relief in the initial action, the final judgment embodies all of a party's rights arising out of the transaction involved, and a party will be foreclosed from later seeking relief on the basis of issues which might have been raised in the prior action. *Yuen v. Durham,* 488 A.2d 1346, 1348 (D.C.1985); *Henderson v. Snider Bros., Inc., supra,* 439 A.2d at 485; *Brotherhood of Railroad Trainmen v. Atlantic Coast Line Railroad,* 127 U.S.App.D.C. 298, 300, 383 F.2d 225, 227 (1967), *cert. denied,* 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968); RE-STATEMENT (SECOND) OF JUDGMENTS § 18 comment a (1982) (plaintiff's original claim is "merged" in the judgment). Therefore, upon the entry of judgment in favor of Stutsman in the consolidated survival/loss of consortium action and the denial of his motion for a new trial, his wrongful death cause of action merged into the final judgment and his separate claim was extinguished.

■ That Stutsman brought his second action under a different theory, wrongful death, which had not actually been adjudicated in the prior consolidated action, is irrelevant. It is the factual nucleus, not the theory upon which a plaintiff relies, which operates to constitute the cause of action for claim preclusion purposes. *Page v. United States,* 234 U.S.App.D.C. 332, 334, 729 F.2d 818, 820 (1984). Stutsman's claim for wrongful death arose out of pre-

cisely the same facts as the survival and loss of consortium actions; all of his theories of recovery stem from the same transaction. *Yuen v. Durham, supra,* 488 A.2d at 1349; *see* RESTATEMENT (SECOND) OF JUDGMENTS § 24 comments b & c (1982).

Furthermore, contrary to Stutsman's contention, as a prevailing party in the judgment in the consolidated action he could have appealed since the judgment did not accord him the full relief that he had requested.[4] Thus if Stutsman believed that Judge Shuker erred in denying the motion to amend the malpractice complaint, Stutsman should have filed an appeal of the denial after the entry of final judgment in the consolidated action. Since the time for filing an appeal from that judgment expired on March 4, 1987, Stutsman's failure to preserve his rights by noting an appeal means that all of his rights stemming from the death of his wife have been merged into the judgment in the consolidated action, and he cannot thereafter maintain any lawsuit against Kaiser predicated upon her death. *See Brotherhood of Railroad Trainmen, supra,* 127 U.S.App.D.C. at 300, 383 F.2d at 227; 1B J. MOORE, J. LUCAS & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.416[5], at 533 (1984).

■ Nor may Stutsman now attack the pretrial ruling in his posture as appellee in Kaiser's appeal of the consortium judgment. He did not appeal from that judgment, and "[b]ecause of that fact, [he] may not attack the judgment in this court, and may only defend those aspects of the judgment which favored [him]." *Edwards v. Woods,* 385 A.2d 780, 783 (D.C.1978). The well-settled rule of practice is that "on an adversary's appeal a party may not challenge or seek to enlarge a judgment to which he himself did not object." *Associated Third Class Mail Users v. United*

---

4. *Clawson v. Rye,* 281 Ark. 8, 11, 661 S.W.2d 354, 357 (1983) (prevailing party demonstrating prejudicial error which might affect amount of damages has standing to appeal); *Carlson Indus. v. Murphy Trucking Co.,* 168 Cal.App.3d 691, 694 n. 1, 214 Cal.Rptr. 331, 332 n. 1 (1985) (party receiving substantially less damages than demanded has standing to appeal); *Taylor v. Polackwich,* 145 Cal.App.3d 1014, 1020 n. 3, 194 Cal.Rptr. 8, 12 n. 3 (1983) (same); *Casado v. Melas Corp.,* 69 N.C.App. 630, 635, 318 S.E.2d 247, 250 (1984) (prevailing party has standing to appeal if judgment is only partly in his favor or is less favorable than he thinks it should be). *See also* D.C. Code § 11–721 (b) (1981) ("party aggrieved by a[ ] [final] order or judgment ... may appeal therefrom as of right to the District of Columbia Court of Appeals.").

*States Postal Serv.*, 213 U.S.App.D.C. 252, 255, 662 F.2d 767, 770 (1980); *see also Arnold's Hofbrau, Inc. v. George Hyman Constr. Co., Inc.*, 156 U.S.App.D.C. 253, 258, 480 F.2d 1145, 1150 (1973); *Renaire Corp. v. Vaughn*, 142 A.2d 148, 150 (D.C. 1958) (party who failed to file cross-appeal could not allege error in favorable judgment on adversary's appeal from that judgment). The proper remedy for Stutsman was to file a cross-appeal from the judgment in the consolidated survival and loss of consortium action.[5] Therefore in the absence of exceptional circumstances, *see, e.g., Edwards v. Woods, supra*, 385 A.2d at 783; *Arnold's Hofbrau, supra*, 156 U.S. App.D.C. at 258, 480 F.2d at 1150 ("unconscionable for plaintiff to be entitled to claim a greater or lesser recovery for the same damage from [the defendant who did appeal] than from [the defendants who did not]"), Stutsman may not now, on Kaiser's appeal, ask this court to correct what he contends is an erroneous pre-trial ruling.

Judge Hamilton dismissed the wrongful death action on January 6, 1987. At that time, the judge had not yet denied the post-trial motions in the consolidated action. Thus, the judgment in the consolidated action had not yet become final for purposes of claim preclusion. This circumstance cannot now affect our disposition of this appeal, however, for although the consolidated judgment was not final when Judge Hamilton dismissed the wrongful death action, the judgment in the consolidated action became final when the time for filing an appeal from it expired on March 4, 1987.[6] Stutsman failed to note a cross-appeal in the appeal from the loss of consortium judgment and therefore any rights he might have had arising out of his wife's death have now been extinguished, and he is left with his rights upon the judgment. RESTATEMENT (SECOND) OF JUDGMENTS § 18 comment a (1982).

The merger of Stutsman's rights into that judgment has rendered a decision on the correctness of Judge Hamilton's dismissal of the wrongful death action unnecessary, for even if we were to reverse that decision, we could grant Stutsman no relief, since the final judgment in the consolidated action would serve to preclude any further litigation arising out of Kaiser's negligent treatment of Mary Stutsman. Consequently, since "pending [Stutsman's] appeal, an event occur[red] which render[ed] it impossible for the appellate court to grant any relief ... the question [has] become[ ] moot and the appeal will be dismissed." *Barber v. District of Columbia Dep't of Human Resources*, 361 A.2d 194, 196–97 (D.C.1976) (quoting *Smith v. Worksman*, 99 A.2d 712, 713 (D.C.1953)). In addition, to allow Stutsman to pursue his appeal from the dismissal of his separate wrongful death action notwithstanding the merger of that action in a final judgment would encourage not only the filing of multiple lawsuits to evade the effect of adverse trial court rulings, but *seriatim* appeals as well.[7]

---

**5.** *See Howard v. Lightner*, 214 A.2d 474, 475 (D.C.1965); *see also Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 668 (5th Cir.1983) (citing *Morley Constr. Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191, 57 S.Ct. 325, 327, 81 L.Ed. 593 (1937)); *Wellman v. Birkel*, 220 Neb. 1, 7, 367 N.W.2d 716, 721 (1985) (plaintiff who failed to cross-appeal could not assign inadequacy of prejudgment interest awarded to her as error); *Board of County Commissioners v. Peterson Excavating, Inc.*, 406 N.W.2d 674, 677 (N.D.1987) (county which was awarded eighty-five percent of requested damages and which failed to cross-appeal could not seek a more favorable result on adversary's appeal); 9 J. MOORE, B. WARD, & J. LUCAS, MOORE'S FEDERAL PRACTICE ¶¶ 204.11[1], 204.11[3] (1987).

**6.** The filing of an appeal does not suspend the preclusive effect of an otherwise final judgment.

*Mahoney v. Campbell*, 209 A.2d 791, 794 (D.C. 1965); *Synanon Church v. United States*, 579 F.Supp. 967, 974 (D.D.C.1984), *aff'd*, 261 U.S. App.D.C. 13, 820 F.2d 421 (1987). Thus, the filing of an appeal by Kaiser in the consolidated action did not prevent that judgment from having preclusive effect.

**7.** *See Brotherhood of Railroad Trainmen, supra*, 127 U.S.App.D.C. at 300, 383 F.2d at 227, where the court stated:

It is a well-settled and virtually axiomatic rule of sound judicial administration that a party having several alternative grounds for relief arising out of a particular transaction does not have the privilege of litigating his theories one at a time, holding one in reserve while he presses another to judgment. According to the complementary principles of bar and

Accordingly, we hold that Stutsman's wrongful death claim merged in the consolidated judgment, and because he did not appeal directly from that judgment, or file a cross-appeal, the appropriateness of the dismissal of his wrongful death action has become moot, and his appeal must be dismissed. *Barber v. District of Columbia Dep't of Human Resources, supra,* 361 A.2d at 196–97; *Smith v. Worksman, supra,* 99 A.2d at 713.

### III.

#### Dismissal of the Loss of Consortium Claim

■ Kaiser contends that under the District's choice of law principles, Virginia law, which prohibits actions for loss of consortium by the husband for injuries to the wife, should have been applied to the consortium claim, and therefore Stutsman would have no cause of action for loss of consortium on the basis of personal injuries sustained by Mary Stutsman. Accordingly, Kaiser maintains that the damage award for loss of consortium must be reversed. Stutsman responds that *Stutsman I* applies, since Virginia has no interest in seeing its laws applied to deny recovery to its citizens for an injury perpetrated by District of Columbia corporations.

In the District of Columbia, a husband may seek damages for the loss of consortium sustained due to injuries negligently inflicted upon his wife. *Curry v. Giant Food Co.,* 522 A.2d 1283, 1293–94 (D.C. 1987); *Hitaffer v. Argonne Co.,* 87 U.S. App.D.C. 57, 60, 183 F.2d 811, 814, *cert. denied,* 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950). Virginia, in contrast, has abrogated this common law right of action and does not permit a husband to recover damages from a third party for loss of consortium due to injuries negligently inflicted upon his wife. VA. CODE ANN. § 55–36 (1986 Repl.Vol.).[8] The federal courts in Virginia, relying on the legislative history, have construed this statute to mean that "the husband in Virginia has no right, directly or indirectly, to recover for his loss of his wife's companionship and affection...." *Carey v. Foster,* 345 F.2d 772, 776 (4th Cir.1965) (reviewing amendments of 1932 and 1950); *see Miller v. Holiday Inns, Inc.,* 436 F.Supp. 460, 462 (E.D. Va. 1977). Nor may a husband recover for a wife's medical expenses or loss of services. *Bolen v. Bolen,* 409 F.Supp. 1374, 1375–76 (W.D. Va.1976).[9] Given the clear conflict between the laws of the two jurisdictions, we must decide which jurisdiction has the greater interest in the application of its substantive law.

For more than twenty years, the District of Columbia has adhered to the governmental interest analysis approach to choice of law. *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.,* 534 A.2d 1268, 1270 (D.C. 1987); *Gaither v. Myers,* 131 U.S.App.D.C. 216, 222, 404 F.2d 216, 222 (1968); *Tra-*

---

merger, whether a party loses or wins relief in his initial action, the judgment embodies all his rights stemming from the transaction involved, and he is foreclosed from later seeking relief on the basis of issues he might have raised in the prior proceedings to support the original claim.

**8.** VA. CODE ANN. § 55–36 (1986 Repl.Vol.) provides in pertinent part:

In an action by a married woman to recover for a personal injury inflicted on her she may recover the entire damage sustained including the personal injury and expenses arising out of the injury, whether chargeable to her or her husband, notwithstanding the husband may be entitled to the benefit of her services about domestic affairs and consortium, and any sum recovered therein shall be chargeable with expenses arising out of the injury, including hospital, medical, and funeral expenses, and any person, including the husband, partially or completely discharging such debts shall be reimbursed out of the sum recovered in the action, whensoever paid, to the extent to which such payment was justified by services rendered or expenses incurred by the obligee, provided, however, that written notice of such claim for reimbursement, and the amount and items thereof, shall have been served on such married woman and on the defendant prior to any settlement of the sum recovered by her; and no action for such injury, expenses or loss of services or consortium shall be maintained by the husband.

**9.** *See also Semler v. Psychiatric Institute of Washington, D.C.,* 188 U.S.App.D.C. 41, 43–46, 575 F.2d 922, 924–27 (1978) (differences between the District of Columbia and Virginia wrongful death and survival actions).

*montana v. S.A. Empresa de Viacao Aerea Rio Grandense*, 121 U.S.App.D.C. 338, 341, 350 F.2d 468, 471 (1965), *cert. denied*, 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966). This approach was applied in *Stutsman I.* It requires, broadly speaking, a two-step inquiry; the first identifying the governmental policies underlying the applicable laws, and the second determining which jurisdiction's policy would be most advanced by having its law applied to the facts of the case before us. *Stutsman I, supra*, 491 A.2d at 509; *Williams v. Williams*, 390 A.2d 4, 5–6 (D.C.1978).

In *Stutsman I*, this court held that the substantive tort law of the District of Columbia would apply to Mary Stutsman's medical malpractice action against Kaiser because the health benefits provided by her District of Columbia employer resulted in her participation in Kaiser's health plan and her subsequent negligent treatment by Kaiser's agents. 491 A.2d at 510. This does not require, however, that the District's substantive law also be applied to her husband's action for loss of consortium. This jurisdiction has long recognized that the tort of loss of consortium is a distinct cause of action for injury to the marriage itself involving the prosecution of separate and independent rights, even when the claim is joined in the wife's suit for damages for injuries to her by the defendants. *Langsburgh & Bros., Inc. v. Clark*, 75 U.S.App.D.C. 339, 340–41, 127 F.2d 331, 332–333 (1942) ("In the prosecution of these separate and independent rights there is no privity, and a judgment against one is not a bar to an action by the other."). By focusing on the governmental policies underlying a potentially interested jurisdiction's substantive laws, the issue-by-issue approach of interest analysis makes it far more likely that the law of one jurisdiction will be found to govern one aspect of a case while the law of another jurisdiction will control another aspect of

that case. *See* R. WEINTRAUB, COMMENTARY ON THE CONFLICT OF LAWS 72 (1980). This process of applying the law of different states to determine different issues in the same case is known as *depecage. Id.* at 73.[10] Although the term may rarely be used,[11] the concept that it embodies is not unfamiliar to the choice of law field. For example, it has long been the practice of courts to apply the forum's procedural law even while applying the substantive law of another jurisdiction. *See, e.g., Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 42, 172 N.E.2d 526, 529, 211 N.Y.S.2d 133, 138 (1961) (applying forum rules on damages to action brought under Massachusetts wrongful death statute); *see also* RESTATEMENT OF CONFLICT OF LAWS § 332 (1932) (validity of contract determined by law of the place of contracting, but sufficiency of performance judged by law of place of performance); R. LEFLAR, AMERICAN CONFLICTS LAW 221–22 (1977). *Depecage* under the interest analysis in choice of law is simply the application of "the rule of law that can most appropriately be applied to govern the particular issue,"[12] and its rationale is no less applicable to different causes of action. Thus, upon applying the interest analysis principle of *Stutsman I*, the law of Virginia should be applied to Stutsman's action for loss of consortium if our examination of the relevant governmental policies reveals that Virginia has the more significant interest in the application of its substantive law.

The following facts are pertinent to our choice of law determination. Stutsman and his deceased wife were at all times residents of Virginia. Virginia was the situs of their marital domicile. The negligence which gave rise to Stutsman's cause of action for loss of consortium occurred entirely in Virginia. Stutsman, unlike his deceased wife, who was employed in the District, had no contact with the District

10. The term derives from the French verb *depecer*, meaning "to dissect" or "to take to pieces." Wilde, *Depecage in the Choice of Tort Law*, 41 S. CAL. L. REV. 329 n. 3 (1968) (citing P. LAROUSSE, MODERN FRENCH-ENGLISH DICTIONARY (1960)).

11. *See In re Air Crash Disaster Near Saigon, South Vietnam on April 4, 1975*, 476 F.Supp. 521, 526 n. 11 (D.D.C.1979).

12. Reese, *Depecage: A Common Phenomenon in Choice of Law*, 73 COLUM. L. REV. 58 (1973) (Reese).

relevant to this lawsuit; he lived and worked in Virginia.

As between the potential interests of the jurisdictions involved, the interest of Virginia is clear. It has an obvious interest in regulating the legal rights of married couples domiciled in Virginia. In pursuit of this interest, Virginia's legislature has eliminated the common law restrictions on a married woman's capacity to sue by giving a married woman the exclusive right to sue for damages for her personal injuries. *See* VA. CODE ANN. § 55–36, *supra* note 8. The purpose of this enactment was to enlarge the personal rights of married women and to grant them separate legal estates. *Vigilant Ins. Co. v. Bennett,* 197 Va. 216, ——, 89 S.E.2d 69, 71 (1955); *see Carey v. Foster, supra,* 345 F.2d at 774. Subsequent revisions to the Virginia statute have retained the prohibition on the husband's maintenance of any action for loss of consortium. *See Carey v. Foster, supra,* 345 F.2d at 775. We are faced, therefore, with a long-standing policy on the part of Virginia to grant the injured wife the sole right to seek damages for her personal injuries. Unlike *Stutsman I,* 491 A.2d at 509, where the court was presented with a false conflict between District of Columbia and Virginia public policies, we confront a real conflict between the policies of the two jurisdictions.

Looking to the potential interest of the District of Columbia in application of its law to Stutsman's loss of consortium action, it is clear that a key factor which underlay the application of the substantive tort law of the District to the medical malpractice action in *Stutsman I* is absent from the instant case. A significant premise of the prior decision was the District's interest in "protecting a member of its work force who contracts for health services with a District of Columbia corporation within this forum and then is injured by the negligence of that corporation's agents." *Stutsman I, supra,* 491 A.2d at 510. The police power responsibilities upon which this interest is based, however, would not be served by permitting Stutsman to maintain a suit for loss of consortium, since he is not a member of the District's work force. On the other hand, the District certainly has an interest in holding its corporations liable for negligent acts attributable to their agents. *See id.* at 509–10.

Several factors persuade us that Virginia has the more significant interest in the application of its law to Stutsman's loss of consortium action. First, the courts following governmental interest analysis choice of law principles have held that an action for loss of consortium is governed by the law of the state where the marriage is domiciled. *Felch v. Air Florida, Inc.,* 562 F. Supp. 383, 386 (D.D.C.1983) (citations omitted). *See also Linnell v. Sloan,* 636 F.2d 65, 67 (4th Cir.1980) (using District of Columbia choice of law rules and applying the law of marital domicile to loss of consortium action). As explained in *Felch,* the District of Columbia has little, if any, interest in the marital relationship of Virginia residents. *Felch, supra,* 562 F.Supp. at 386–87. Virginia, however, has a great interest in determining the legal rights of its married residents. *Id.*[13]

Second, Virginia has enacted a statute tailored to the specific cause of action asserted here, and under Virginia choice of law principles a Virginia court would apply that state's own law if this case were before it. *See McMillan v. McMillan,* 219 Va. 1127, 1128, 253 S.E.2d 662, 663 (1979) (substantive rights of parties in multi-state tort action are governed by law of place of the wrong). Our analysis here is similar to that employed in *Tramontana, supra,* 121 U.S.App.D.C. 338, 350 F.2d 468. In that case, the United States Court of Appeals for the District of Columbia Circuit was

---

**13.** Stutsman's loss of consortium action presents a weaker case for the application of the District's substantive law than did *Felch.* In that case, the tortious conduct had occurred in the District. 562 F.Supp. at 384. Thus, the District's "strong interest in punishment and deterrence of wrongful conduct causing harm to ... plaintiffs within its borders ..." was implicated. *Id.* at 386. Here, neither the wrongful conduct (Kaiser's negligent treatment of Mary Stutsman) nor the harm to Stutsman (the loss of his wife's services and society) occurred in the District of Columbia.

faced with a choice of law question involving three potentially interested jurisdictions: the forum of the action (District of Columbia), the place of the wrong (Brazil), and the residence of the plaintiff and her decedent (Maryland).[14] In concluding that the Brazilian limitation on damages should govern the extent of the defendant's liability, two elements were crucial to the Circuit Court's analysis. The first was the existence of the Brazilian statute which was specifically tailored to the particular cause of action at issue and which protected the national interest in the financial solvency of the state-owned airline by limiting tort recovery, 121 U.S.App.D.C. at 341–42, 350 F.2d at 471–72, and the second was the fact that under the choice of law principles of the state of the plaintiff's residence (Maryland) the law of the place of the wrong would apply. *Id.* at 343–45, 350 F.2d at 473–75. In the Circuit Court's view, this indicated a lesser interest on the part of Maryland in the application of its substantive law. *Id.* The Circuit Court reasoned, therefore, that if, to the detriment of one of its own residents, Maryland would not assert its interest and disregard the Brazilian damage limitation, the District of Columbia courts should not do so in the face of the clearly-expressed interest of Brazil in limiting recovery for deaths in aviation accidents. *Id.* at 345, 350 F.2d at 475.

Applying this analysis here, "the focus of [Virginia's] concern could hardly be clearer." *Id.* at 341, 350 F.2d at 471. Like the Brazilian liability limitation in *Tramontana*, Virginia has enacted a statute specifically intended to abolish the action that Stutsman, a Virginia resident, seeks to prosecute. Virginia has a clearly articu-

lated policy of allowing only the wife to recover for her personal injuries. Under these circumstances we are unpersuaded that the District's interest in holding its corporations liable for their negligent acts outweighs Virginia's interest in establishing the legal rights of married couples residing in that state, particularly where the negligent conduct and the injury to the plaintiff all occurred in the state of the marital domicile. In addition, Virginia's choice of law rules do not indicate a lesser interest in the application of its substantive law. Had this action been brought originally in Virginia, its courts would have applied Virginia law to Stutsman's loss of consortium claim because the conduct complained of occurred in Virginia. *Frye v. Commonwealth*, 231 Va. 370, 374, 345 S.E. 2d 267, 272 (1986); *McMillan v. McMillan, supra,* 219 Va. at 1128, 253 S.E.2d at 663. Furthermore, the application of Virginia law to Stutsman's loss of consortium action is consistent with the Stutsmans' reasonable expectations as to the standards by which their marital relations will be governed in the event of suit. *See Allstate Ins. Co. v. Hague,* 449 U.S. 302, 318 n. 24, 101 S.Ct. 633, 643 n. 24, 66 L.Ed.2d 521 (1981) (plurality opinion); *id.,* 449 U.S. at 324 n. 11, 327 & n. 16, 329–30 n. 22, 330 & n. 23, 331, 101 S.Ct. at 646 n. 11, 648 & n. 16, 648–49 n. 22, 649 & n. 23, 650 (Stevens, J. concurring); *id.* at 336, 101 S.Ct. at 652 (Powell, J., dissenting); *Stutsman I, supra,* 491 A.2d at 508 & n. 8; Reese, *supra* note 12, 73 COLUM. L. REV. at 60, 62 (reasonable expectations of parties is one factor relevant to determining the proper scope of application of *depecage* ).[15]

---

**14.** *Tramontana* was a wrongful death action arising out of the crash of a United States Navy aircraft operated by the defendant in Brazil. 121 U.S.App.D.C. at 339, 350 F.2d at 469. The plaintiff's husband was a passenger on the airplane and was killed in the accident. The plaintiff instituted an action for wrongful death in the United States District Court for the District of Columbia and sought damages in the amount of $250,000. Defendant Varig Airlines moved for summary judgment in respect to so much of the plaintiff's claim as exceeded the U.S. dollar equivalent of 100,000 Brazilian cruzeiros, relying on an article of the Brazilian code limiting liability for injury or death in aviation accidents

to that amount. At that time, 100,000 Brazilian cruzeiros were worth approximately $170. A judgment was entered in favor of the plaintiff for $170, and the plaintiff appealed.

**15.** Stutsman's reliance on *Albert v. McGrath,* 107 U.S.App.D.C. 336, 278 F.2d 16 (1960) is misplaced. In that case the court applied District of Columbia law in a suit for intentional alienation of affections and criminal conversation brought by a Maryland resident against a District of Columbia resident whose involvement with the plaintiff's husband included alienating activities in the District. Not only has this jurisdiction long since abandoned *Albert's* place-of-

In *Stutsman I* we recognized that Virginia undoubtedly has an interest in the welfare of its residents and had enacted a statute limiting malpractice damage awards to protect Virginia health care providers against excessive damage awards. 491 A.2d at 510–11. Mrs. Stutsman's interests, however, the court stated, "can in no sense" be said to be protected by that statute insofar as her medical malpractice claim was concerned. *Id.* at 511. Hence, the court reasoned, Virginia's interest in the application of its law "becomes attenuated when its intended beneficiaries are foreign corporations with principal places of business outside the State." *Id.* The same cannot be said with respect to Stutsman's loss of consortium claim since Virginia's clearly-expressed interest in regulating the legal rights of married couples domiciled within its borders would be seriously impaired by application of District law to this claim, *see Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359, 1361–62 n. 4 (D.C.1985) (utilizing principle of "comparative impairment"), while the District has little recognizable interest in having its law govern the legal relationship of two persons married and living in Virginia. *Felch, supra,* 562 F.Supp. at 386–87.

Accordingly, the trial court erred in failing to dismiss plaintiff's claim for loss of consortium and the judgment awarding plaintiff damages on this claim must be reversed.

*Appeal No. 87–143 dismissed as moot; Appeal No. 86–265 judgment against Kaiser for loss of consortium reversed.*

the-wrong analysis in choice of law questions, but while the District's interest in protecting marriages may be aided by the maintenance of alienation lawsuits, the same is not equally true for loss of consortium lawsuits; nor does the District's general interest in marriages outweigh Virginia's interest in determining the rights which inhere in a Virginia marriage as a result of harm to the marriage occurring in Virginia to Virginia residents.