Timothy **STEWART**, Plaintiff,

v.

**CAPITOL AREA PERMANENTE MEDICAL GROUP, P.C., et al.,**
**Defendants.**

Civ. A. No. 89–1116.

United States District Court,
District of Columbia.

Aug. 17, 1989.

4

Daniel E. Schultz, Washington, D.C., for plaintiff.

William O. Bittman, Alexander P. Starr, Reed Smith Shaw & McClay, Washington, D.C., for defendants.

## ORDER

REVERCOMB, District Judge.

The defendants in this medical malpractice case have moved to transfer this case to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1404(a). The defendants also moved to dismiss the wrongful death claim, in case the Court denies the dismissal motion. In this order, the Court denies both motions.

*Alleged Facts*

The plaintiff alleges that defendants Capitol Area Permanente Medical Group, P.C., and Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc., were negligent in their medical treatment of the plaintiff's wife, Willa M. Stewart, who died on February 4, 1987. The alleged negligent care took place at the defendants' medical facilities in Landover, Maryland, a suburb of Washington, D.C., on or about March 12, 1986. The plaintiffs lived in Landover, although the plaintiff and his wife were entitled to medical care through a group health care plan obtained at plaintiff's job, which was located in the District of Columbia. The defendants are District of Columbia corporations who each do business in both the District of Columbia and Maryland.

Pursuant to Maryland law, the plaintiff submitted his claims to the Maryland Health Claims Arbitration Office. After a hearing, the arbitration panel ruled in favor of the defendants. The plaintiff filed this action rejecting the panel's decision. The plaintiff made claims under the survival act, for loss of consortium, and for wrongful death.

*Transfer Pursuant to § 1404(a)*

A United States District Court may transfer any case to another district where the case could have been brought, for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). This standard is substantially similar to the common-law test of *forum non conveniens*, although a district court is given greater discretion to grant a motion under § 1404(a) than it has under the doctrine of *forum non conveniens*. *E.g., SEC v. Savoy Industries, Inc.*, 587 F.2d 1149, 1154–55 (D.C.Cir.1978), *cert. denied sub nom., Zimmerman v. SEC*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979).

Despite the greater discretion that is afforded to judges under § 1404(a), a Court naturally should still be guided by the factors traditionally used in *forum non conveniens* determinations. In *Pain v. United Technologies Corp.*, 637 F.2d 775 (D.C.Cir.1980), the Court of Appeals ruled that after the moving party has established the existence of an adequate alternative forum, a judge's *forum non conveniens* inquiry should consider the relevant "private" factors, which include the relative ease of access to sources of proof, the cost of of obtaining attendance of willing witnesses, and the availability of compulsory process. *Id.* at 784, 782. If the private factors are in at least "near equipoise," then the judge should consider "public" factors, such as which state's substantive law governs the case. *Id.* at 784–85, 782. Although the § 1404(a) inquiry does not necessarily require such a rigid two-step inquiry, the plain words of the statute give prominence to the private, convenience factors. Because these factors, as well as choice of law considerations, tilt in favor of the plaintiff's choice of forum, the Court denies the defendants' motion.

Much of the defendants' case is based on the allegation that the State of Maryland has more ties to this matter than

does the District of Columbia.[1] Even if this were true, the Court must be careful not to confuse the factors that are paramount in the *choice of law* determination—which state has the greatest interest in the litigation—with the factors to be considered in a *§ 1404(a)* motion, of which "convenience of the parties" is among the most prominent. State lines are of crucial importance in making the proper choice of law, but are less important in deciding which forum is more convenient to the parties and would best serve the interests of justice. Finally, the Court notes that the "interest of the states" argument has less force in a § 1404(a) matter than in the "choice of law" decision, because the former does *not* implicate the doctrine of federalism. The question in a § 1404(a) motion does not necessarily involve deciding between federal or state interests or between the substantive law of two states; the matter involves a choice between having the case litigated in either one or another court established by the United States government.

The Court analyzes each of the § 1404(a) factors in turn.

### Convenience of the Parties

■ The convenience factors weigh heavily in favor of the plaintiff. The plaintiff, the doctors involved, the likely witnesses, the medical records, and the center of the business operations of the defendants are all in the Washington, D.C., metropolitan area. Indeed, the plaintiff works in the District of Columbia. Parties and witnesses can reach the United States Courthouse in Washington by public transportation or by a short car ride; travel to the United States Courthouse in Baltimore, Maryland, would be a far longer and more difficult proposition. While the defendants note correctly that the plaintiff, the witnesses and the records in this case are "in Maryland"—meaning the Maryland suburbs of Washington—the Court points out that state lines are of little significance *per se* in determining convenience; it is clear to the Court that litigation in the United States District Court for the District of Columbia would be far more convenient to all involved than litigation in the United States District Court for the District of Maryland, located in Baltimore.

### Plaintiff's Choice of Forum

■ While courts generally give great deference to the plaintiff's choice of forum, *see, e.g., Pain,* 637 F.2d at 783, it also makes sense to temper that deference when the plaintiff's choice of forum is one outside of his home jurisdiction. *See, e.g., Martin–Trigona v. Meister,* 668 F.Supp. 1, 2 (D.D.C.1987). Because the plaintiff is a resident of Maryland, the Court gives little weight to his choice of forum, other than that already given because the chosen forum appears to be the most convenient to the plaintiff.

### Choice of Law

■ The "public" factors, which are given lesser weight than the "private" factors of convenience and choice of forum in a *forum non conveniens* decision, *see Pain,* 637 F.2d at 784–85, do not weigh significantly in favor of either the plaintiff or the defendant. The most important of these factors involves determining whether the federal court in which the case was brought would apply the substantive law of the state in which it sits. *See Pain,* 637 F.2d at 782.

■ A federal court chooses the appropriate state law by using the choice of law rules of the jurisdiction in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941). In choosing the appropriate law, the District of Columbia uses a "governmental interests" test in which the Court is to identify each jurisdiction's interest in having its substantive law applied and then choose which jurisdiction has the stronger interest. *Kaiser–Georgetown Community Health*

---

1. This was also a basis for transfer from the United States District Court for the District of Columbia to the court in Maryland in *Ott v.*

*Kaiser–Georgetown Community Health Plan, Inc.,* 689 F.Supp. 9 (D.D.C.1988).

*Plan, Inc. v. Stutsman*, 491 A.2d 502, 509 (D.C.1985) ("*Stutsman I*").

In *Stutsman I*, the District of Columbia Court of Appeals considered a case substantially similar to the one in the instant case—the injured party was a resident of a Washington suburb (Virginia, in *Stutsman I*) who was treated negligently there, but who worked in the District and received her medical plan through her employer. The health care provider was incorporated in the District. The court ruled that District of Columbia law applied to the negligence claims because: (1) the District of Columbia has a strong interest in applying its negligence laws to those who obtain medical care through their employment in the District; (2) the District has a policy of holding corporations incorporated here fully accountable for their torts; and (3) Virginia's statutory cap on medical malpractice awards was intended primarily to help Virginia corporations, not one incorporated in the District. *Id.* at 509–11.

The points made in *Stutsman I* were modified in *Stutsman v. Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.*, 546 A.2d 367, 373 (D.C.1988) ("*Stutsman II*"), a successor case to *Stutsman I* brought by the husband of the injured party in *Stutsman I* and raising a loss of consortium claim. The District of Columbia Court of Appeals ruled that Virginia law applied to the loss of consortium claim. Applying the governmental interests test, the court concluded both that the District of Columbia had *little* interest in the loss of consortium claim—the plaintiff, unlike his wife, was not covered by the defendants' health plan and had no contacts with the defendants in the District of Columbia—and that Virginia had a *strong* interest in the claim, as expressed by its clearly articulated policy against permit-

ting certain loss of consortium claims. *Id.* at 373–74.

In the instant case, the Court finds no valid grounds for distinguishing *Stutsman I* in deciding which law to apply to the plaintiff's Survival Act and loss of consortium claims. Although the defendants point out that the decedent in this case, like the survivor/plaintiff in *Stutsman II*, was not employed in the District of Columbia, the Court notes that she received her medical care by virtue of her husband's plan, obtained by his employment in the District. Moreover, this case is being brought by Mr. Stewart, who holds the same relationship to the defendants as did the plaintiff in *Stutsman I*.

Moreover, although the plaintiff cites *Ott v. Kaiser Georgetown Community Health Plan, Inc.*, 689 F.Supp. 9, 13 & n. 2 (D.D.C. 1988), for the proposition that the existence of a District of Columbia health plan should not be decisive factor,[2] the Court concludes that *Ott* was clearly at odds with *Stutsman I*, and that in interpreting District of Columbia law a court should always look first to decisions of the District of Columbia Court of Appeals.

Finally and most significantly, the Court notes that, unlike in *Stutsman II*, the defendants have not argued to the Court that Maryland has expressed any particularly strong statutory interest in having its laws govern survival and loss of consortium claims by Maryland citizens. Therefore, because *Stutsman I* held that the District of Columbia has a strong interest in having its laws apply to medical malpractice cases that arise out of health care plans from District of Columbia jobs, and because there is no extraordinary interest of Maryland in having its laws apply, the Court concludes that it must apply District of

---

**2.** The defendants also cite *Estrada v. Potomac Electric Power Co.*, 488 A.2d 1359 (D.C.1985), for the proposition that Maryland law should apply to this case. In *Estrada*, the plaintiffs were injured on the Maryland property of the defendant, which was incorporated in the District of Columbia. The Court choose to apply Maryland law. *Id.* at 1362 n. 6. Unlike in *Estrada*, however, the case at bar involves a *contract* for medical care based on employment in the Dis-

trict—the situation that was the basis for the decision to apply District law in *Stutsman.*

Finally, the Court notes that the defendant has not argued, and the Court does not believe, that the plaintiff is precluded from asking for District law to apply to this case merely because he first submitted his claims to the arbitration board in Maryland, as required by Maryland law.

Columbia law to the plaintiff's survival act and loss of consortium claims.

The Court reaches a different conclusion in regard to the plaintiff's wrongful death claim, however, because of the Maryland and District of Columbia wrongful death statutes. The District's wrongful death statute by its express terms creates a cause of action *only* for deaths arising from injuries inflicted in the District. D.C. Code Ann. § 16–2701; *Higgins v. Metropolitan Area Transit Authority,* 507 F.Supp. 984, 986 (D.D.C.1981). On the other hand, Maryland has expressed a clear interest in creating a cause of action for wrongful death claims arising from injuries in Maryland. Md. Courts & Jud. Proc.Code Ann. §§ 3–901 to 3–904 (1983). While it may be argued that the drafters of the District statute perhaps did not expect that District of Columbia law could apply to a case in which the injuries were inflicted outside the District and that the Court should therefore expand the statute to cover the death in this case,[3] the Court concludes that the clear language of the statutes point to applying Maryland law.[4] Application of one jurisdiction's law for certain claims and another jurisdiction's law for another claim is not unusual; indeed, this was the outcome in the *Stutsman* cases, which explicitly approved such *depecage. Stutsman II,* 546 A.2d at 373.

In sum, because the Court will apply District law to certain claims and Maryland law to another, the choice of law decision does not argue in favor of transferring this case to the District of Maryland.[5]

*Other "Public" Factors*

■ In addition to the choice of law factor, a court deciding a § 1404(a) motion should consider whether the citizens of its jurisdiction would be burdened by jury duty in cases involving another state's law[6] and whether the Court's docket would be unburdened by removing foreign cases. *Pain,* 637 F.2d at 791–92. Because the Court concludes that it will apply the substantive law of both District of Columbia and Maryland to this case, this factor does not weigh in favor of either the plaintiff or the defendant.

Finally, the defendants urge the Court to grant their transfer motion to discourage "forum shopping," stating that "it is difficult not to infer that this District Columbia forum was chosen solely to take advantage of the perceived benefits to plaintiffs of litigating medical malpractice cases before District of Columbia juries." Defendants' Memo. at 14–15. To this inference, which is often made, *see Ott v. Kaiser–Georgetown Community Health Plan, Inc.,* 689 F.Supp. 9, 14 (D.D.C.1988), yet seldom proven, must be added the fact that the District of Columbia also is the most *convenient* forum for the plaintiff—a fact which to this Court eliminates any inference of forum-shopping.

*Conclusion*

In sum, the Court believes that denying the defendant's motion and keeping this case before this Court would be convenient to the parties and witnesses, most of whom

---

3. There would be no sense to an argument that the District intended to *bar* wrong wrongful death claims in cases arising from injuries outside the District but in which District law applies.

4. Because the plaintiff in the case at bar received his health coverage and coverage for his wife through his employment in the District of Columbia, the District *does* have an interest in applying its laws to his claim, *see Stutsman I,* unlike the situation in *Stutsman II,* in which the plaintiff had no ties to the District. However, because the clear language of the jurisdictions' wrongful death statutes tilts in favor of Maryland, the Court concludes that Maryland's interest in having its law apply to the wrongful death claim is stronger than the District's.

5. The Court also concludes that even if it had decided that Maryland law applies to all of the plaintiff's claims, this factor would *not* outweigh the compelling factor of convenience in keeping this case before the court in the District of Columbia. Application of Maryland law is not a significant hardship to a District of Columbia court, which traditionally looks to Maryland law if there is no District law on point.

6. Many of the "public" factors mentioned in *Pain* depend on whether the court would apply the law of the jurisdiction in which it sits. *Pain,* 637 F.2d at 791–92. If the answer is "yes," the factors automatically work in favor of the plaintiff; if the answer is "no," the factors work in favor of the defendant.

reside or work in the District of Columbia or in Maryland suburbs of the District. Because the "public" factors do not weigh significantly in favor of either the plaintiff or defendant, the Court concludes that "the convenience of the parties" and "the interests of justice" would be served by not transferring this case to the United States District Court for the District of Maryland. Accordingly, it is

ORDERED that the defendants' motion to transfer is DENIED; it is further

ORDERED that the defendants' motion to dismiss the wrongful death claim is DENIED.