**Llewelyn CROOKS, Appellant,**

v.

**Maxine D. WILLIAMS, et al.,**
**Appellees.**

**Nos. 85–98, 85–184.**

District of Columbia Court of Appeals.
Argued Nov. 14, 1985.
Decided March 7, 1986.*

* The decision in this case was originally released as a Memorandum Opinion and Judgment. It is being published pursuant to this court's order granting the motion of counsel for publication.

John C. Hayes, Jr., with whom Thomas A. Guidoboni, Washington, D.C., was on brief, for appellant.

Harlow R. Case, with whom Jack H. Olender, Washington, D.C., was on brief, for appellees.

Before NEBEKER, MACK and ROGERS, Associate Judges.

NEBEKER, Associate Judge:

Dr. Llewelyn Crooks appeals from a jury verdict of negligence in a medical malpractice/wrongful death and survival action. He contends that the trial court erred in granting appellee Maxine Williams' motion in limine forbidding mention of a settlement with a hospital. He also claims that the trial court erred in failing to grant his motion for a directed verdict and that he is entitled to a pro rata credit against the judgment. We find no error and affirm.

Llewelyn Crooks is a Board Certified physician specializing in obstetrics and gynecology. On May 22, 1979, at approximately 6:00 p.m., Dr. Crooks received a telephone call from one of his patients, Maxine Williams. Williams, who was approximately thirty-two weeks pregnant at the time, reported to Dr. Crooks that her "water had broken." Dr. Crooks told Williams to report immediately to Greater Southeast Community Hospital. Dr. Crooks then telephoned the hospital and alerted them to Williams pending arrival. Upon her arrival, hospital personnel performed a vaginal examination and confirmed that Williams had experienced a premature rupture of her membrane. When rupture occurs, the amniotic fluid rushes out of the womb, leaving no cushion between the baby and the mother's bony structure. Without this cushion, the umbilical cord may fall into the birth canal and become compressed between the baby's

head and the mother's pelvis when the uterus contracts. When the cord becomes compressed, the baby's blood supply is briefly closed off and its heart rate decreases. If cord compression happens too frequently, the baby may be deprived of enough oxygen to result in injury or death.

After it had been determined that the membrane had been ruptured, Dr. Crooks ordered by telephone that Williams be placed on a fetal heart monitor. The fetal heart monitor records the baby's heart rate as well as the strength and duration of the mother's contractions. The tracings produced by the monitor in this case revealed a number of decelerations in the fetal heart rate between 8:30 p.m. on May 22 and the early morning hours of May 23. The fetus died at approximately 5:00 a.m. on May 23. The last contact that Dr. Crooks had with the hospital was by telephone at approximately 8:00 p.m. on the evening of May 22. Dr. Crooks never came to the hospital until sometime after 9:00 a.m. on May 23.

Maxine Williams, as administratrix of her child's estate, sought recovery under the wrongful death and survival statutes, D.C.Code §§ 16–2701, –12–101 (1981), alleging that the negligence of Dr. Crooks and the hospital resulted in her baby being stillborn. The estate and the hospital settled prior to trial for $75,000. Dr. Crooks proceeded to trial and was found to have been negligent. The jury awarded the estate $370,000.

■■■ As a result of the settlement, the trial court granted Williams' pretrial motion in limine which prohibited counsel from mentioning that the hospital "was in any way responsible" for the death of the child. Crooks argues that the trial court erred in granting the motion because it prevented him from presenting evidence of the hospital's negligence. This evidence, he argues, would have demonstrated an intervening proximate cause that would have insulated him from liability. Assum-

ing that the trial court erred in granting the motion prior to trial, a review of the record demonstrates that the trial court in effect reconsidered[1] its earlier ruling by allowing Crooks to present evidence and argue to the jury the issue of an intervening proximate cause.

■■■ During trial, counsel cross-examined Williams' medical expert on the training and skill of the nursing staff and the propriety of Dr. Crooks relying upon those nurses to monitor his patient. By this examination, counsel clearly presented the question of nursing negligence to the jury. Counsel was then allowed to argue the negligence of both the nurses and the resident on call. Moreover, the trial court instructed the jury on intervening cause. The court told the jury that they must find for Dr. Crooks if the hospital or its employees acted negligently in either failing to contact him or by incorrectly interpreting the fetal monitor strip. We can perceive of no prejudice to Dr. Crooks by the pretrial order where, as here, the issue of the hospital's alleged negligence was in any event presented to the jury. Super.Ct.Civ.R. 61.

Dr. Crooks also contends that the trial court erred in denying his motion for directed verdict. We disagree.

■■■ In acting on a defendant's motion for a directed verdict, the trial court must view the evidence in the light most favorable to the plaintiff, and may only take the case from the jury if no reasonable man could find the defendant liable. *Ceco Corp. v. Coleman*, 441 A.2d 940, 944 (D.C. 1982). In reviewing the trial court's denial of the motion, we are governed by the same standard. *Id.* Where the evidence is such that reasonable men could differ as to negligence and causation, the question of liability is properly submitted to the jury. *Id.*

■■■ We are satisfied that the evidence in this case, viewed in the light most favor-

---

1. The trial judge has wide discretion to make or refuse to make advance rulings on the admissibility of evidence. Rulings on these matters remain subject to reconsideration at any time during the trial. McCormick, Evidence § 52 (3d ed. 1984).

able to appellee Williams, properly presented a question for the jury. Expert testimony was offered to establish the appropriate standard of care. That testimony established that Dr. Crooks, as the attending physician, was under a duty to know the status and well-being of his patient. He was responsible for knowing when fetal abnormalities were occurring and to be with his patient as soon as possible after they began. He should have been in contact with the hospital, or at least have assured that hospital personnel would be in contact with him regarding the status of his patient. The fetal tracings showed a baby in distress which should have been delivered by Caesarean section by approximately 11:20 p.m. Dr. Crooks' status made him the only person who could have surgically intervened to deliver the baby. This evidence is sufficient to allow a reasonable juror to conclude that Dr. Crooks had a duty to report to the hospital, assess the mother and fetus in light of the monitor tracing, and safely deliver the baby via Caesarean section. The evidence is also sufficient to allow for the conclusion that Dr. Crooks' failure to do so resulted in the death of the baby.

■ Crooks' final contention is that the trial court erred in not applying a pro rata (50%) credit against the jury award. We disagree.

Williams sued both Dr. Crooks and the hospital alleging negligence. She settled with the hospital prior to trial for $75,000. Following a trial against Crooks alone, the jury awarded the estate $370,000. The trial court then applied a *pro tanto* credit against the award, deducting $75,000, representing the amount of the settlement with the hospital. We find no error. Where, as here, the settling defendant's liability *vel non* has not been determined, the granting of a *pro tanto* credit is proper. *Hall v. General Motors Corp.*, 207 U.S.App.D.C. 350, 358, 647 F.2d 175, 183 (1980).

*Affirmed.*