William E. JOHNSON, et al. Plaintiff,

v.

MERCEDES–BENZ, USA, LLC Defendant,

v.

Katherine Elayne Short Third–Party Defendant

No. CIV.A.00–2870.

United States District Court, District of Columbia.

Jan. 17, 2002.

Charles Taylor Smith, II, Silver Spring, MD, for Plaintiff.

Sean Francis O'Hagan Murphy, John Smith Jenkins, Jr., McGuire, Woods, Battle & Boothe, L.L.P., McLean, VA, Rosewell Page, III, Deborah M. Russell, Leo J.M. Boyd, McGuire Woods, LLP, Richmond, VA, Daniel Karp, Matthew D. Peter, Allen, Johnson, Alexander & Karp, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff William E. Johnson, suing individually and as the Personal Representative of the Estate of Goldie C. Johnson, brings this survival action against Defendant Mercedes–Benz USA, LLC, a Delaware corporation. Plaintiff alleges that a defective airbag in an automobile distributed by Defendant Mercedes–Benz USA, LLC ("Mercedes–Benz") caused the death of Goldie C. Johnson, the wife of Plaintiff William E. Johnson. In response, Mercedes–Benz has brought an action for contribution and indemnification against Third–Party Defendant Katherine Elayne Short ("Short").

Three Motions are pending before the Court: Short's Motion for Summary Judgment ("Short MSJ") [# 63], Mercedes–Benz's First Motion for Partial Summary Judgment ("Def. MSJ I") [# 51], and Mercedes–Benz's Second Motion for Partial Summary Judgment ("Def. MSJ II") [# 60]. Upon consideration of the Motions and all related pleadings, Short's Motion for Summary Judgment is **denied in part** and **granted in part**, Mercedes–Benz's First Motion for Partial Summary Judgment is **denied**, and Mercedes–Benz's Second Motion for Partial Summary Judgment is **granted.**

## I. FACTUAL BACKGROUND [1]

On November 10, 1997, at approximately 11:45 am, Goldie C. Johnson, who was driving her family's 1989 Mercedes–Benz sedan, stopped at a red light at the intersection of Sixteenth and Aspen Streets NW, in the District of Columbia. *See* Pl. Compl. ¶ 10. After the sedan had stopped, a car driven by Katherine Short collided from the rear, and caused the sedan to collide with the vehicle in front of it. According to Plaintiff, the sedan's occupant restraint system ("airbag") was activated during the collisions, and caused "blunt force injury to the chest" of Johnson. *Id.* ¶¶ 13–14, 16.

After being taken to a hospital, Mrs. Johnson was subsequently pronounced dead at 5:36 pm, nearly six hours after the accident. *See id.* ¶ 15. According to Plaintiff, the cause of death was recorded as "exsanguination, transection of the aorta due to blunt force injury to the chest." *Id.* ¶ 15.

On May 28, 1998, George Viedma, Short's representative,[2] proposed a settlement between Short and Johnson, whereby Short's insurer would pay the Estate of Mrs. Johnson ("the Estate") $20,000 (the insurance policy limit) in exchange for a general release of liability. *See* Short MSJ, Exh. C (May 28, 1998 letter). On June 10, 1998, Viedma sent the Estate a letter with a general release and a check for $20,000. *See* Short MSJ, at 14 & Exh. D (June 10, 1998 letter), Exh. E (general release); Pl. Statement of Material Facts ¶ 6. The letter requested that the Estate sign, notarize, and return the general release, and that the Estate "hold payment in escrow pending completion and return of release." Short MSJ, Exh. D (June 10, 1998 letter).[3] Thereafter, the Estate did not sign, notarize, and return the general release, and did not cash the check for $20,000.

On June 30, 1998, the Estate mailed a proposed limited release to Viedma. *See* Pl. Opp. to Short MSJ ¶¶ 6–7. Subsequently, Viedma sent a revised version of the limited release to the Estate.[4] This revised limited release included handwritten language requiring that Plaintiff hold Short "harmless ... for any and all losses

---

1. All facts contained herein are undisputed by the parties, unless noted otherwise by the Court.

2. Viedma is a representative of Short's insurer, Nationwide Mutual Insurance Company, d/b/a Nationwide Insurance Enterprise, Rockville, Md.

3. Short and Mercedes–Benz claim that the general release would bar Plaintiff from suing Mercedes–Benz. The general release reads in relevant part:

 FOR AND IN CONSIDERATION OF the payment to me/us the sum of TWENTY THOUSAND ($20,000) dollars ... I/we ... have released and discharged ... Katherine Short ... *and any and all persons, firms, and corporations* ... of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, *including claims or suits for contribution and/or indemnity,* of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known and unknown personal injuries, death, and/or property damage resulting or to result from an accident that occurred on or about 11–10–97 at or near 16 ST/ASPEN ST/WASHINGTON, DC/DC NW.

 \* \* \* \* \* \*

 I/we understand that this settlement is the compromise of a *doubtful and disputed claim,* and that the payment is *not* to be construed as an *admission of liability* on the part of the persons, firms and corporations hereby released by whom liability is expressly denied.

 Short MSJ, Exh. E (emphasis added).

4. The record does not indicate the date on which Viedma sent this revised limited release.

incurred, including costs of defense and indemnification." Short MSJ, Exh. G (revised limited release). The revised limited release further stated:

It is Understood and Agreed that [Short], by making payment to the Johnson estate and by agreeing to the contents of this Release is not admitting liability.... *[Short] denies all liability* and intends merely to avoid Litigation.

\* \* \* \* \* \*

It is further Understood and Agreed that *this Release does not and shall not bar any cause of action*, right, lien or claim arising from the said event which any party to this release may now have or may in the future have *against any alleged tortfeasor* or any entity or person not specifically named herein and released hereby.

*Id.* (emphasis added).

On July 14, 1998, Plaintiff, as Personal Representative of the Estate, signed and notarized the revised limited release and subsequently mailed it to Viedma. *See id.;* Pl. Opp. to Short MSJ, at 5. On that same date, the Estate's attorney deposited the $20,000 check in his escrow account. *See* Pl. Opp. to Short MSJ, Exh. 5 (Crestar Bank deposit slip for $20,000 dated July 14, 1998). On July 24, 1998, Viedma mailed a letter to the Estate which read in pertinent part: "This letter is in respond [sic] to your Settlement Agreement and Release of Claim Agreement. Our Defense Counsel has reviewed your release and insist [sic] on the language in the release. The *current Agreement is not acceptable at this time.*" Short MSJ, Exh. H (July 24, 1998 letter) (emphasis added).

The Estate's attorney spoke with Viedma on July 25, 1998. *See* Pl. Statement of Material Facts ¶ 10. The Estate's attorney informed Viedma during this conversation that the Estate had accepted and mailed the revised limited release. At this juncture, Viedma instructed the Estate's attorney to disregard his July 24, 1998 letter. *See id.*[5] On that same day, July 25, 1998, the Estate's attorney paid Plaintiff $14,000, which was Plaintiff's share of the $20,000 check. *See* Pl. Opp. to Short MSJ, Exh. 8, at 1 (Crestar Bank check for $14,000).

Short claims that Viedma subsequently mailed the Estate a letter dated September 30, 1998.[6] *See* Short MSJ, at 7 & Exh. I (Sept. 30, 1998 letter). In pertinent part, the letter stated: "I would like you to be aware that by cashing the settlement check you have accepted the settlement offer." Short MSJ, Exh. I. The Estate did not respond to this letter.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering whether there is a triable issue of fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248, 106 S.Ct. 2505. Moreover, "any factual assertions in

5. Third–Party Defendant Short does not dispute Plaintiff's account of this conversation. *See* Short MSJ, at 7.

6. Plaintiff claims that the Estate did not receive this letter. *See* Pl. Opp. to Short MSJ, Statement of Material Facts ¶ 11.

the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C.Cir. 1992) (*quoting Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982)); *Washington Post Co. v. United States Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989).

## III. ANALYSIS

Initially, all parties agree that District of Columbia law controls this diversity case.

### A. Third–Party Defendant Short's Motion Against Mercedes–Benz for Summary Judgment

#### 1. Settlement Agreement

In response to Third–Party Plaintiff Mercedes–Benz's Complaint, Third–Party Defendant Short has filed a Motion for Summary Judgment. In her Motion, Short requests the Court to determine, as a matter of law, the terms of the settlement agreement between Short and the Estate of Goldie C. Johnson. It is undisputed that, in exchange for $20,000, the Estate waived its right to sue Short or her insurer for Mrs. Johnson's death. However, the parties disagree as to whether the Estate and Short's insurer agreed to a general release or limited release of liability.

Short makes two arguments. First, she argues that the general release mailed by Viedma on June 10, 1998 constituted the settlement agreement between her insurer and the Estate.[7] Alternatively, she agrees with Plaintiff that the limited release signed by Plaintiff on July 14, 1998 constituted the settlement agreement.

A settlement agreement is a contract and therefore is generally governed by principles of contract law. *See Simon v. Circle Associates, Inc.*, 753 A.2d 1006, 1012 (D.C.2000). A valid and enforceable contract requires "both (1) agreement as to all material terms, and (2) intention of the parties to be bound." *Id.* (citation omitted). Thus, there must be "an honest and fair meeting of the minds as to all issues in a contract." *Id.* (internal quotation omitted). Under District of Columbia law, the offeror determines the manner by which a contract is accepted. *See Malone v. Saxony Cooperative Apartments, Inc.*, 763 A.2d 725, 729 (D.C.2000) (citation omitted).

In his letter dated June 10, 1998, Viedma, the representative of Short's insurer, offered to settle with the Estate in exchange for a general release of liability and payment of $20,000. Viedma indicated that to accept this offer, the Estate needed to sign, notarize, and return the general release. Thereafter, the Estate could cash the settlement check.

However, the Estate did not sign, notarize, or return the general release. Instead, on June 30, 1998, the Estate counteroffered with a limited release of liability and payment of $20,000. Subsequently, sometime between June 30, 1998 and July 14, 1998, Viedma further counteroffered with the *revised* limited release and payment of $20,000. On July 14, 1998, Plaintiff, as Personal Representative of the Estate, signed and notarized the revised limited release, and mailed it back to Viedma. That same day, the Estate cashed the $20,000 settlement check. *See* Pl. Opp. to Short MSJ, Exh. 5 (Crestar Bank deposit slip for $20,000 dated July 14, 1998). On

---

7. Mercedes–Benz has joined Short's argument that the general release constituted the settlement agreement between her insurer and the Estate. *See* Mercedes–Benz's Limited Joinder in Third–Party Defendant's Motion for Summary Judgment, at 2.

July 25, 1998, the Estate's attorney orally indicated to Viedma that the Estate had accepted the terms of the revised limited release.

Therefore, as of July 14, 1998—the date on which the Estate signed and notarized the revised limited release offered by Viedma, cashed the settlement check, and mailed the revised limited release to Viedma—both the Estate and Short's insurer had agreed to be bound to all material terms of the settlement. *See Simon,* 753 A.2d at 1012.[8] Moreover, the Estate accepted the revised limited release in the manner specified by Short's insurer, the offeror, in Viedma's first offer of May 28, 1998; that manner of acceptance was never changed as the parties exchanged counteroffers. *See Malone,* 763 A.2d at 729. Thus, the contract was formed at the moment when the Estate mailed Viedma the revised limited release and deposited the settlement check.

■ Short argues that her insurer only agreed to enter into the general release, not the revised limited release. She insists that she rejected the terms of the revised limited release in her letter dated July 24, 1998: "This letter is in respond [sic] to your Settlement Agreement and Release of Claim Agreement. Our Defense Counsel has reviewed your release and insist [sic] on the language in the release. The *current Agreement is not acceptable at this time.*" Short MSJ, Exh. H (emphasis added).

However, this letter is of no effect because the contract between Short's insurer and the Estate had already been formed when Viedma sent it on July 24, 1998. Indeed, Third Party Defendant Short does not deny that Viedma instructed the Estate's attorney to disregard that letter. Even if the July 24, 1998 letter was not retracted, it is ambiguous as to which agreement was "not acceptable". At most, the letter constituted a proposal to *modify* the revised limited release, which had already been accepted on July 14, 1998. Since the record fails to show that the Estate consented to any such modification, *see Rinck v. Ass'n of Reserve City Bankers,* 676 A.2d 12, 17 (D.C.1996) (citation omitted) (modification to a contract requires mutual consent of the parties), Viedma's July 24, 1998 letter had no impact on the existence of the agreement which had been offered and accepted by Short's insurer and the Estate, respectively.

■ Short further argues that the Estate accepted the general release under the doctrine of accord and satisfaction.[9] Short claims that on September 30, 1998, Viedma mailed the Estate a letter which included the following sentence: "I would like you to be aware that by cashing the settlement check you have accepted the settlement offer." Short argues that by cashing the settlement check, the Estate actually accepted the general release, not the modified limited release. In response, Plaintiff claims that the September 30, 1998 letter was never received. More significantly, in terms of considering a Motion for Summary Judgment, the undisputed

8. Short does not dispute that the Estate mailed Viedma the revised limited release, and does not deny that Viedma received it.

9. "Accord and satisfaction is a method of discharging and terminating an existing right and constitutes a perfect defense in an action for enforcement of the previous claim. In doctrinal theory, accord and satisfaction requires both a contract, known as the accord, and performance of that contract, known as satisfaction." *Pierola v. Moschonas,* 687 A.2d 942, 947 (D.C.1997) (internal citation omitted). For certain types of disputed claims, a creditor's cashing of a debtor's check "constitutes both the acceptance of the accord and its satisfaction." *Id.* The burden of proof to establish accord and satisfaction rests with its proponent. *See id.*

record shows that the Estate did cash the $20,000 settlement check on July 14, 1998, more than *two months* before the date of the purported letter. *See* Pl. Opp. to Short MSJ, Exh. 5 (Crestar Bank deposit slip for $20,000 dated July 14, 1998).

█ Thus, it is abundantly clear that the Estate cashed the settlement check *before* it could even have responded to, let alone received, Viedma's September 30, 1998 letter. Therefore, Short may not escape the terms of the revised limited release by invoking the doctrine of accord and satisfaction. The Court holds that the revised limited release constitutes the settlement agreement between Short's insurer and the Estate.[10] Accordingly, Short's Motion shall be denied insofar as it argues that the general release constituted the settlement agreement between Short's insurer and the Estate, and shall be granted insofar as it argues, alternatively, that the revised limited release constituted the settlement agreement.

## 2. Mercedes–Benz's Right to Indemnification

█ In her Motion, Short also argues that, as a matter of law, Mercedes–Benz may not obtain any indemnification from her should it be found liable to Plaintiff. In her Motion, Short argues that since she was "jointly liable for the injuries sustained by Ms. Johnson", Mercedes–Benz may not obtain indemnification from her. Short MSJ, at 22. In contrast, Mercedes–Benz claims that it is entitled to "complete indemnity" from Short for any liability to Plaintiff. Third–Party Compl., at 4.

█ Indemnity generally involves the "shifting of the entire loss from one who has paid it to another who would be unjustly enriched at the indemnitee's expense by the indemnitee's discharge of the obligation." *District of Columbia v. Washington Hosp. Center*, 722 A.2d 332, 340 (D.C.1998). A duty to indemnify may be "implied in fact (on an implied contract theory) or implied in law in order to achieve an equitable result." *R. & G. Orthopedic Appliances and Prosthetics, Inc. v. Curtin*, 596 A.2d 530, 544 (D.C.1991). When based on equitable principles, indemnity may be granted to an indemnitee if there is a "significant difference in the kind and quality" between the indemnitee's and the indemnitor's wrongdoing. *Quadrangle Development Corp. v. Otis Elevator Co.*, 748 A.2d 432, 435 (D.C.2000) (citation omitted).

There are presently numerous material facts in dispute with regard to the "kind

---

10. Even if it were concluded that the Estate and Short's insurer had agreed to the general release on June 10, 1998, the day the insurer's letter was sent to the Estate, the doctrine of accord and satisfaction would lead to the same result. According to Short, the general release expressly extinguishes the liability to the Estate of "all other persons, firms, and corporations" in connection with Goldie C. Johnson's death. Short MSJ, Exh. 2 (general release). Under District of Columbia law, "the effect of a release of a joint tortfeasor [is] ordinarily a question of fact dependent on two inquiries: (1) did the plaintiff intend to release all wrongdoers or only the particular party named in the release; and (2) did the amount settled for fully compensate the plaintiff, or was it taken merely as the best obtainable compromise for the settler's liability ... Only where the terms of the release leave no room for doubt should these decisions be made as a matter of law." *Noonan v. Williams*, 686 A.2d 237, 240–41 (D.C.1996) (*quoting Hill v. McDonald*, 442 A.2d 133, 138–39 (D.C.1982)) (internal quotation omitted). Employing this analysis, the District of Columbia Court of Appeals has repeatedly held that the phrase "all other persons, firms, and corporations" is "imprecise" and "subject to more than one reasonable interpretation". *Noonan*, 686 A.2d at 245; *see also Lamphier v. Washington Hosp. Center*, 524 A.2d 729, 732–33 (D.C.1987).

and quality" of Mercedes–Benz's potential liability to Plaintiff. *See id.* Indeed, Mercedes–Benz denies any liability whatsoever to Plaintiff. As a result, it is not possible to compare the "kind and quality" of Mercedes–Benz' wrongdoing (if any) with that of Short. *See id.* at 435. Accordingly, the Court must deny as premature Short's Motion with respect to indemnification.

### B. Third–Party Plaintiff Mercedes–Benz's Motion for Partial Summary Judgment Regarding Its Right to *Pro Rata,* As Opposed to *Pro Tanto,* Reduction of Damages

▇▇ Short's Motion and Mercedes–Benz's First Partial Motion for Summary Judgment both argue that, as a matter of law, Mercedes–Benz would be entitled to a *pro rata* reduction of 50 percent if it is found liable to Plaintiff. Under this theory, Mercedes–Benz need only pay half of any damages awarded to Plaintiff, because Plaintiff has already settled with Short. Disagreeing, Plaintiff responds that if found liable, Mercedes–Benz would have to pay full damages, less a *pro tanto* (dollar-for-dollar) reduction of $20,000.

▇▇ In the District of Columbia, it is well established that joint tortfeasors are equally liable for their wrongdoing and therefore are entitled to *pro rata* contribution from all other joint tortfeasors.[11] *See Washington Hosp. Center,* 722 A.2d at 336. Only if a settling tortfeasor has been adjudged or stipulated liable,[12] *see Paul v. Bier,* 758 A.2d 40, 44–45 (D.C.2000), may a nonsettling tortfeasor receive a *pro rata*

reduction of its liability. If a settling tortfeasor has *not* been adjudged liable, only a joint stipulation between the settling tortfeasor *and* the plaintiff will establish its liability. *See District of Columbia v. Shannon,* 696 A.2d 1359, 1367 (D.C.1997) (*citing Berg v. Footer,* 673 A.2d 1244, 1251 (D.C.1996)).

In this case, the Estate settled with Short before filing this lawsuit against Mercedes–Benz. Although she had "denie[d] all liability" in the revised limited release, Short now offers to stipulate that she was in fact liable to the Estate. Short MSJ, Exh. G (revised limited release). However, the Estate has refused to join Short's unilateral stipulation of liability. Only a joint stipulation between Short and Plaintiff can establish Short's liability. *See id.* Thus, Short's liability has not been established by either adjudication or stipulation, and Mercedes–Benz is not entitled to receive a 50 percent *pro rata* reduction in any award Plaintiff may receive. *See Paul,* 758 A.2d at 44–45; *Shannon,* 696 A.2d at 1367.

Seeking to save its right to a *pro rata* reduction, Mercedes–Benz asks for an adjudication that Short is liable to the Estate as a matter of law. *See Paul,* 758 A.2d at 44–45. Numerous material facts are in dispute with regard to Short's purported liability. Thus, the Court is in no position to make a judgment that Short is liable to the Estate as a matter of law. Accordingly, the Court must deny Mercedes–Benz's First Motion for Partial Summary Judgment and Short's Motion as to Mercedes–Benz's right to a *pro rata* reduction.

---

11. "[T]his jurisdiction does not recognize comparative negligence[.]" *Washington Hosp. Center,* 722 A.2d at 336 n. 3.

12. Without such a determination of liability, a nonsettling tortfeasor is entitled to a *pro tan-*

*to,* not *pro rata,* reduction. *See Washington v. Washington Hosp. Center,* 579 A.2d 177, 186 (D.C.1990); *Crooks v. Williams,* 508 A.2d 912, 915 (D.C.1986).

**C. Defendant Mercedes–Benz's Second Motion for Partial Summary Judgment To Dismiss Plaintiff's Count IV Claim for Loss of Consortium, Lost Services of Decedent, and Burial Costs**

Plaintiff has brought his lawsuit against Mercedes–Benz as a survival action, not a wrongful death action.[13] In its Second Partial Motion for Summary Judgment, Mercedes–Benz requests that Plaintiff's claims for loss of consortium (Count IV), lost services, funeral-related expenses, and burial costs be dismissed with prejudice. Plaintiff does not oppose the dismissal of his claims for lost services, funeral-related expenses, and burial costs. *See* Def. MSJ II Reply, at 6. Consequently, those claims are dismissed with prejudice. In addition, Mercedes–Benz requests an Order "limiting the possible damages recoverable by Plaintiff to 'under 6 hours' of conscious pain and suffering." Def. MSJ II, at 12. Plaintiff does not oppose this request. Consequently, the Court will issue such an Order.

 Plaintiff opposes the dismissal of Count IV, loss of consortium. Count IV alleges that the *"death* of Mrs. Johnson deprived Mr. Johnson of the services, society, love, affection, companionship, sexual relations and other matters generally associated with a marital relationship." Pl. Compl. ¶ 36 (emphasis added). At common law, a plaintiff has an independent right of action for loss of consortium where a wrongdoer has caused *injury* to his or her spouse. *See Brown v. Curtin & Johnson, Inc.*, 221 F.2d 106 (D.C.Cir.1955); *Hitaffer v. Argonne Co.* 183 F.2d 811 (D.C.Cir.1950), *cert. denied,* 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), *overruled on other grounds by Smither & Co. v. Coles,* 242 F.2d 220, 226 (D.C.Cir.1957); *Perry v. Criss Bros. Iron Works, Inc.*, 741 F.Supp. 985 (D.D.C.1990). However, there is no case that the Court could find, or that Plaintiff has cited, that extends the scope of a survival action to a situation where the surviving spouse claims damages based on the decedent spouse's *death.* In fact, the federal courts in this jurisdiction have expressly held that a right of action for loss of consortium does not extend to a spouse's wrongful death. *See, e.g., Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 564–65 (D.C.Cir.1993) (loss of consortium only recoverable under the District of Columbia Wrongful Death Act);[14] *Ciarrocchi v. James Kane Co.*, 116 F.Supp. 848, 850 (D.D.C.1953); *Brown v. Curtin & Johnson, Inc.*, 117 F.Supp. 830 (D.D.C.1954), *aff'd,* 221 F.2d 106 (D.C.Cir. 1955).[15]

Accordingly, Plaintiff's claim for loss of consortium (Count IV) will be dismissed with prejudice, and the Court must grant Mercedes–Benz's Second Motion for Partial Summary Judgment.

---

13. Based on the filing date of this lawsuit, a wrongful death claim would be barred under the applicable statute of limitations. *See* Def. MSJ II, at 2.

14. While *Joy* interpreted the District of Columbia Wrongful Death Act, D.C.Code § 16–2701, its rationale equally applies to survival actions brought under D.C.Code § 12–101.

15. Although Plaintiff argues that he may bring his claim under *Stutsman v. Kaiser Foundation Health Plan,* 546 A.2d 367 (D.C.

1988), that case fails to advance his cause. In *Stutsman,* the plaintiff filed a loss of consortium claim *before* his wife died. *Stutsman* merely re-affirms the existence of a common law right of action for loss of consortium. Significantly, *Stutsman* expressly states that "a husband may seek damages for loss of consortium sustained due to *injuries* negligently inflicted upon his wife." *Id.* at 372 (emphasis added, citations omitted). Thus, *Stutsman* in no way recognizes a right of action for loss of consortium under a survival action.

## IV. CONCLUSION

For the foregoing reasons, the Court **denies in part** and **grants in part** Short's Motion for Summary Judgment, **denies** Mercedes–Benz's First Motion for Partial Summary Judgment, and **grants** Mercedes–Benz's Second Motion for Partial Summary Judgment.

An appropriate Order will issue with this Opinion.

### *ORDER*

Defendant Mercedes–Benz USA, LLC has filed two Motions for Partial Summary Judgment [# 51, # 60], and Third–Party Defendant Short has filed a Motion for Summary Judgment [# 63]. Upon consideration of the Motions and all related pleadings, Short's Motion for Summary Judgment [# 63] is **denied in part** and **granted in part,** Mercedes–Benz's First Motion for Partial Summary Judgment [# 51] is **denied,** and Mercedes–Benz's Second Motion for Partial Summary Judgment [# 60] is **granted.** It is further **ordered,** that any possible damages recoverable by Plaintiff be limited to "under six hours" of pain and suffering.